Jenny Scovis, Esq., State Bar No. 87026
Kim D. Scovis, Esq., State Bar No. 182059
**LAW OFFICES OF KIM D. SCOVIS**
223 East Thousand Oaks Boulevard, Suite 412
Thousand Oaks, California  91360
Telephone: (805) 496-6413   Facsimile: (805) 379-3966

Attorneys for Plaintiff, MARIA LAZOS as an individual, and *THE ESTATE OF THOMAS BARRERA, By and Through its Successor in Interest, MARIA LAZOS*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LAZOS, *THE ESTATE OF THOMAS BARRERA, By and Through its Successor in Interest, MARIA LAZOS* | Case No. CV08-02987-RGK (SHx) |
| | (consolidated w/ CV 08-05153 RGK ) |
| Plaintiff, | |
| vs. | **PLAINTIFFS MOTION IN LIMINE NO. 9 TO EXCLUDE ANY EVIDENCE PERTAINING TO THE 6" FIXED BLADE KNIFE, PIECE OF METAL (POSS KNIFE BLADE); METAL CHISEL; ALLEN WRENCH TOOL SET; THE FOLDING KNIFE, THE SYRINGE FOUND IN DECEDENT'S POCKET AND THE SWABS FROM THE BMX BIKE** |
| CITY OF OXNARD; OXNARD POLICE DEPARTMENT; POLICE CHIEF JOHN CROMBACH; ANDREW SALINA, and DOES 1-10 | |
| Defendants. | |
| AND CONSOLIDATED ACTION | |

DATE: August 11, 2009
TIME:
DEPT: "850"

Plaintiffs, MARIA LAZOS, TOMAS BARRERA and *THE ESTATE OF THOMAS BARRERA BY AND THROUGH ITS SUCCESSORS IN INTEREST MARIA LAZOS and TOMAS BARRERA* do hereby submit their Motion in Limine seeking an Order Excluding any and/or all Evidence wherein the Defendants either discarded and/or consumed all forensic biological evidence pertaining to and/or constituting said evidence, including but not limited

1

1.      6" Fixed Blade Knife w/ Broken Tip and all DNA Swabs of the knife handle;

2.      Folding Knife , and Swab of Portion of Red Stain on Blade and Swab of Handle:

3.      DNA Sample /Control and Blank Swabs From Truck, including Swabs from interior drivers side door lever, samples and controls, swabs from steering wheel, glvoe box, interior passenger side door handle/lever, interior drivers side door handle/pull, gearshift lever/knb, interior passenger side door pull, from exterior,  and from ignition switch including swabs and control samples;

4.      Piece of Metal (possible Tip of Knife)

5.      One metal part (possible knife blade);

6.      The Syringe found in Decedents Pocket;

7.      Swab from red metal chisel;

8.      Swab from possible knife blade; and dna swab collected from misc metal parts;

9.      Allen Wrench Tool set;

10.     Pittsburgh Multi Allen Wrench Tool Set and swab of multi-tool; and

11.     All other evidence where in the biological and/or forensic evidence was either consumed and/or discarded.

Plaintiffs are seeking exclusion of these items of evidence, and all other items of evidence wherein Defendants consumed, discarded, failed to notify Plaintiffs' counsel or their experts that tests were being done, and/or wherein Defendants did intentionally, wantonly and/or negligently fail to preserve said items of evidence.  Plaintiffs further seek an Order excluding Defendants from referencing and or discussing any of these items and/or any issues pertaining and/or reflecting these items of evidence.

Counsel for Thomas Barrera, Daniel C. Morgan, Esq, wrote to the Custodian of Records for the Oxnard Police Department on November 12, 2007, asking defendants to preerve all evidence.  Counsel for Plaintiff Maria Lazos, Jenny Scovis, Esq., wrote to each Defendant separately on January 07, 2009, wherein defendants were specifically asked to notify Scovis of any testing that Defendants intended on performing on all biological and forensic evidence, so that Scovis' expert may attend such testing.  Defendants were further

1   asked to preserve each and every item of evidence, including DNA and biological evidence.

2   Defendants tested the evidence on November 28, 2007, March 05, 2008; and

3   February 19, 2008.   By even the earliest of these dates, Defendants had notice from **both**

4   plaintiffs that a claim had been filed, and that the evidence needed to be preserved.  Counsel

5   for Thomas Barrera had written to defendants requesting preservation of evidence on the

6   initial date of testing, and Maria Lazos had already filed a Claim Against Public Entity.  By

7   the next date of testing, Defendants had been contacted via correspondence by **both** counsel

8   for Plaintiffs, and had actual knowledge of the need to preserve/conserve said evidence.

9   As stated in fuller detail in the County of Ventura Sheriff's Department Forensic

10  Sciences Laboratory Reports, all of which are attached and incorporated herein, Defendants

11  consumed the majority of DNA and biological evidence, or discarded almost the entirety of

12  the remainder of said evidence.   Neither plaintiff was advised in advance or during said

13  testing that any procedures were going to be performed and that said DNA/biological

14  evidence would be discarded if not consumed.

15  Spoliation of evidence is the destruction or alteration of evidence. Although a party

16  need not have acted in ``bad faith" to be held responsible for spoliation of evidence [see

17  Glover v. BIC Corp. (9th Cir 1993) 6 F3d 1318, 1329], a party must have had notice that

18  documents were relevant or potentially relevant to litigation before the documents were

19  destroyed for spoliation of evidence to have occurred [United States ex rel. Aflatooni v.

20  Kitsap Physicians Serv. (9th Cir 2002) 314 F3d 995, 1001; Akiona v. United States (9th Cir

21  1991) 938 F2d 158, 161].

22  While a litigant is under no duty to keep or retain every document in its possession

23  once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should

24  know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible

25  evidence, is reasonably likely to be requested during discovery, and/or is the subject of a

26  pending discovery request [National Ass'n of Radiation Survivors v. Turnage (ND Cal 1987)

27  115 FRD 543, 556–557, citing Wm. T. Thompson Co. v. General Nutrition Corp. (CD Cal

28  1984) 593 F Supp 1443; see also Zubulake v. UBS Warburg LLC (SDNY 2003) 220 FRD

3

PLAINTIFFS' MOTION IN LIMINE

1  212, 216].

2  A range of sanctions is available for spoliation of evidence under the court's inherent powers

3  [see, e.g., Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp. (9th Cir 1992) 982 F2d

4  363, 368. Courts are invested with inherent powers that are governed not by rule or statute,

5  but by the control necessarily vested in courts to manage their own affairs so as to achieve

6  the orderly and expeditious disposition of cases [Chambers v. NASCO, Inc. (1991) 501 US

7  32, 43–49, 111 S Ct 2123, 115 L Ed2d 27].

8        The following types of sanctions are examples of those imposed under this authority:

9  •   Exclusion of evidence [see, e.g., Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.

10  (9th Cir 1992) 982 F2d 363, 368].

11  •   Dismissal [see, e.g., ; Leon v. IDX Sys. Corp. (9th Cir 2006) 464 F3d 951, 958 Halaco

12  Eng'g Co. v. Costle (9th Cir 1988) 843 F2d 376, 380].

13  •   An award of attorney's fees against a party or counsel who has acted in bad faith,

14  vexatiously, wantonly, or for oppressive reasons [Leon v. IDX Sys. Corp. (9th Cir 2006) 464

15  F3d 951, 961].

16      In cases in which the drastic sanctions of dismissal or default are ordered, the range of

17  discretion for a district court is narrowed, and the losing party's noncompliance must be due

18  to willfulness, fault, or bad faith [Leon v. IDX Sys. Corp. (9th Cir 2006) 464 F3d 951, 958].

19  A finding of any of these circumstances may justify the sanction of dismissal [Halaco Eng'g

20  Co. v. Costle (9th Cir 1988) 843 F2d 376, 381].

21        The existence and degree of prejudice to the wronged party is a factor in the

22  determination of whether to impose a severe sanction such as dismissal [Leon v. IDX Sys.

23  Corp. (9 Cir 2006) 464 F3d 951, 958]. In some published cases, the Ninth Circuit has

24  referred to this factor as optional [see, e.g., Halaco Eng'g Co. v. Costle (9th Cir 1988) 843

25  F2d 376, 382].

26  25.97[2][e]  Imposition of Severe Sanctions Requires Consideration of Public Interest and

27  Policy.

28  Before imposing a harsh sanction such as dismissal, the district court must consider the

1  public interest in expeditious resolution of litigation, the court's own need to manage its

2  dockets, and the public policy favoring disposition of cases on the merits [Leon v. IDX Sys.

3  Corp. (9th Cir 2006) 464 F3d 951, 958].

4  25.97[3]   Sanction Must Be Commensurate With Degree to Which Evidence Was

5  Compromised or Destroyed.

6  In the Ninth Circuit, the particular sanction levied under the court's inherent power depends

7  on [see, e.g., Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp. (9th Cir 1992) 982 F2d

8  363, 369]:

9  •   The degree to which the evidence was altered, lost, or destroyed.

10  •   The degree of the responsible party's culpability.

11  •   Surrounding circumstances such as the parties' previous ability to view or test that

12  evidence prior to its spoliation.

13      When the plaintiff insurer destroyed an electric heater and a boat prior to filing an

14  action against the heater manufacturer for subrogation based on the allegation that the heater

15  cause a fire in the boat, the proper sanction was exclusion of evidence regarding the alleged

16  defect in the heater [see Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp. (9th Cir

17  1992) 982 F2d 363, 369].

18      When appropriate, a party that destroyed potential evidence should show that he or

19  she did not do so in response to the litigation, perhaps by indicating that the evidence was

20  destroyed prior to litigation and before the party could have any reasonable indication that

21  litigation would be brought relative to that evidence [see, e.g., Akiona v. United States (9th

22  Cir 1991) 938 F2d 158, 161, cert. denied, 503 US 962 (1992)].

23      A party should only be penalized for destroying documents if it was wrong to do so,

24  and that requires, at a minimum, some notice that the documents are potentially relevant

25  [Akiona v. United States (9th Cir 1991) 938 F2d 158, 161, cert. denied, 503 US 962 (1992)].

26  A party should only be penalized for destroying documents if it was wrong to do so, and that

27  requires, at a minimum, some notice that the documents are potentially relevant [Akiona v.

28  United States (9th Cir 1991) 938 F2d 158, 161, cert. denied, 503 US 962 (1992)].

1    In the case at bar, there was an officer involved shooting resulting in the death of a
2    young individual.  By the time of the initial testing, all defendants had both actual and/or
3    constructive knowledge that any and/or all DNA evidence must be preserved.  Said evidence
4    was clearly relevant and pertinent to any pending or upcoming litigation.  Officer Salinas and
5    all entity defendants have utilized a self-defense claim *ab initio*.   Testing on the knife that
6    allegedly belonged to the deceased, the tool allegedly thrown at the Officer by the Deceased,
7    and all other evidence referenced above  is essential for **all** parties, not just defendants.

8    As argued in Plaintiffs' Motion to Exclude any Evidence pertaining to the Truck,
9    defendants have an unfair advantage over Plaintiffs by the very nature of their existence.
10   Due to their status as law enforcement and public entities,  defendants could and **did** use
11   their authority to procure evidence and/or witnesses equally necessary to all parties, and to
12   discard, consume, and otherwise keep Plaintiffs from equal access to said evidence and/or
13   witnesses.  To  level the playing field, the Court should impose a greater standard upon any
14   party who could  abuse their position of power.

15   In a sense, defendants are guilty of the very abuses that plaintiffs have charged them
16   with.   Plaintiffs case is premised upon the abuse of Defendants' position, authority and
17   power, which resulted in the wrongful and illegal killing of a young adult without just cause
18   or reason.   Defendants **knew** and were given **actual notice** of the need to preserve the
19   evidence in this action.   They wilfully disobeyed the duty imposed on **all parties** to play
20   fairly and to have a trial **on the merits** with equal access to all involved.

21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

1      It is for this reason that Plaintiffs respectfully request that the Court order the

2 exclusion of any evidence listed herein, and exclude any reference to any such evidence.

3 DATED: June 26, 2009             LAW OFFICES OF KIM D. SCOVIS

4

5                              JENNY SCOVIS
                              Attorneys for Plaintiff

6

7 DATED: June 26, 2009             LAW OFFICES OF GREGORY A. YATES

8

9                              GREGORY A. YATES
                              Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION IN LIMINE

# Exhibit "1"

Oxnard Police Dept
Evidence Manager

## PROPERTY REPORT

07-0025163

File No.:        07-0025163
Cont No.:      07-025163                                      01/31/2008
Charges:      Officer Involved Shotting                       Page:        1
Investigator: 2493 Det Joe Chase
Date In:        10/03/2007
Concluded:

| Item | Item Description | Current Location | Date/Loc Siezed | Member |
|------|------------------|------------------|-----------------|--------|
| 00001 | Photos of Andrew Salinas taken after incident | Photo | 10/03/2007 oxnard police station | 4642 Officer Eric Mora |
| 00002 | digital photographs of crime scene | Photo | 10/03/2007 fifth st/hobson way | 5181 Officer Roger Garcia |
| 00003 | 6 inch Knife (fixed blade) with broken tip  Photo Marker #1 Collected from roadway near suspect's body- BIN #2 | LAB | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 004 | 'WIN' 9mm  Luger Cartridge Case  Photo Marker #2 Collected from roadway near suspect's body- BIN #2 | 187-2 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00005 | 'WIN' 9mm Luger Cartridge Case  Photo Marker #3 BIN #2 | 187-2 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00006 | 'WIN' 9mm Luger Cartridge Case  Photo Marker #4 Collected from roadway near suspect's body- BIN #2 | 187-2 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00007 | 'WIN' 9mm Luger Cartridge Case  Photo Marker #5 Collected from roadway near suspect's body- BIN #2 | 187-2 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00008 | 'Pittsburgh' multi tool Allen Wrench   Photo Marker #6 Collected from roadway near victim's body- BIN #2 | LAB | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00009 | 'Verizon' Cell Phone - S/N F0714022340  Photo Marker #7 Collected from sidewalk south of victim's body- BIN#2 | 187-2 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 010 | Blood and Control Sample Photo Marker #8 Collected from sidewalk south of suspect's body | Freezer | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 0011 | 115 Digital Photographs Tag#182665 | Photo | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |

00542

| .m | Item Description | Current Location | Date/Loc Siezed | Member |
|---|---|---|---|---|
| J12 | 'Beretta' 9mm Handgun  S/N - BER262601<br>Collected from Officer Andrew Salinal | GUNBOX07 | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 00013 | Magazine containing 15 rounds (from duty belt closest to buckle)<br>Collected from Officer Andrew Salinas- BIN #2 | 187-2 | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 00014 | Magazine containing 15 rounds (from duty belt next to radio)<br>Collected from Officer Andrew Salinas- BIN #2 | 187-2 | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 00015 | Magazine containing 11 rounds (from Beretta 9mm Handgun)<br>Collected from Officer Andrew Salinas' duty weapon | 187-3 | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 00016 | 1 'WIN' 9mm Luger Bullet (from chamber of Baretta 9mm Handgun)<br>Collected from Officer Andrew Salinas' duty weapon- BIN #2 | 187-2 | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 0017 | 'Olympus' Digital Recorder<br>Collected from Officer Andrew Salinas- BIN #2 | 187-3 | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 00018 | 'Flying Cross' Uniform Shirt worn by Salinas<br>Collected from Officer Andrew Salinas | LAB | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 00019 | 'Elbeco' Uniform Pants worn by Salinas<br>Collected from Officer Andrew Salinas | LAB | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 00020 | 'Magnum' Boots - Size 8 - worn by Salinas<br>Collected from Officer Andrew Salinas | 187-2 | 10/03/2007 Police Station 251 South C Street | 4935 CSI Debra Schambra |
| 00021 | Bent metal coat hanger    Photo Marker #10<br>Found lying in street at intersection of Fifth Street and G Street- BIN#2 | 187-2 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00022 | Misc. Metal Parts<br>Collected from driver's floorboard of White Chevy Silverado, lic# 8H10852- BIN#2 | 187-2 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 023 | Red Metal Chisel<br>Collected from front bench seat of white Chevy Silverado, lic# 8H10852- BIN #2 | 187-2 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |

| m | Item Description | Current Location | Date/Loc Siezed | Member |
|---|---|---|---|---|
| J24 | Folding Knive with blood Collected from front bench seat of white Chevy Silverado Pick-Up Truck, lic.#8H10852- | 187 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00025 | "BMX" Rampage Bike - S/N CS070512223 Collected from sidewalk near white Chevy Silverado | WAREHOUSE | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00026 | 5 Swabs from "BMX" Bike Collected from grips and tape around flashlights | 187 | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00027 | 111 Digital Photographs from crime scene  Tag# 177145 Downloaded onto the Oxnard Police Department Digital Database | Photo | 10/03/2007 Crime Scene | 4935 CSI Debra Schambra |
| 00028 | 1 Pair of "Converse" Tennis Shoes with white socks Collected from suspect's body at autopsy | 187-3 | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00029 | 1 Pair "Anchor Blue" Jeans Collected from suspect's body at autopsy | LAB | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00030 | 1 Black and Brown Belt with key chain and empty knife sheath Collected from suspect's body at autopsy | 187-3 | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00031 | Metal Spoon, Blue  Ball Point Pen, 5 Sockets Collected from suspect's right rear pants pocket- BIN#2 | 187-2 | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00032 | Seringe with bent needle Collected from right rear pocket of suspect's pants- BIN #2 | 187-2 | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00033 | $10.00 U.S. Currency - 1 five dollar bill and 5 one dollar bills Collected from left rear pocket of suspect's pants | BIG SAFE | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 0034 | Blue 'Bic' Lighter, Multi-Tool Allen Wrench Collected from right front pocket of suspect's pants- BIN#2 | Dets | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |

00544

| m | Item Description | Current Location | Date/Loc Siezed | Member |
|---|---|---|---|---|
| 035 | 1 Pair of black and white "Fruit of the Loom" Boxer Shorts<br>Collected from suspect's body at autopsy | 187-3 | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00036 | 1 black blood stained t-shirt<br>Collected from suspect's body at autopsy | Dets | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00037 | 1 white blood stained "South Pole" t-shirt<br>Collected from suspect's body at autopsy | Dets | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00038 | 1 white "Nauticia" blood stained tank top<br>Collected from suspect's body at autopsy | Dets | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00039 | 1 Brown Paper Bag from suspect's right hand<br>Collected at suspect's autopsy | Dets | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00040 | 1 Brown Paper Bag from suspect's left hand<br>Collected at suspect's autopsy | Dets | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00041 | 1 Pair of "Peerless" Handcuffs with the name Salinas on them<br>Collected from suspect's left wrist at autopsy- BIN#2 | 187-2 | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00042 | 1 Gunshot Residue Kit<br>Collected from suspect's hands at autopsy- BIN#2 | 187-2 | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00043 | 1 Spent Bullet from gunshot wound #1<br>Collected from suspect's upper back- BIN #2 | 187-2 | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 044 | 1 Spent Bullet from gunshot wound #2<br>Collected from suspect's lower back at autopsy-BIN #2 | 187-2 | 10/03/2007<br>Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |

00545

| em | Item Description | Current Location | Date/Loc Siezed | Member |
|---|---|---|---|---|
| .045 | Rolled Fingerprints Collected from suspect at autopsy | B.I. | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00046 | DNA Sample from suspect Collected from suspect at autopsy | 187 | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00047 | Rolled Fingerprints of Suspect Rolled by Shasta Gainer at Crime Scene | B.I | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00048 | 164 Digital Photographs Tag# 177.145 Downloaded onto the Oxnard Police Department Digital Database under this DR Number | Photo | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00049 | Blood Stained White Sheet From Suspect's Body Bag | 187 | 10/03/2007 Ventura County Coroner's Office - Suspect's Autopsy | 4935 CSI Debra Schambra |
| 00050 | LICENSE PLATES OF VEHICLES IN CRIME SCENE | Photo | 10/03/2007 SCENE | 4546 Officer Michael Robison |
| 00051 | Photos of witnesses standing in front of 837 W. Fifth St | Photo | 10/03/2007 837 W Fifth St | 4671 Det Curtis Smith |
| 00052 | PHOTOS OF GRAFFITI FROM MEMORIAL | Photo | 10/07/2007 FIFTH@ HOBSON | 5223 Officer Pedro Rodriguez |
| 00053 | 21 DNA SAMPLE/CONTROL AND BLANK SWABS FROM TRUCK COLLECTED FROM WHITE CHEVY SILVERADO TRUCK CA. LIC #8H10852 | 187 | 10/09/2007 BI PROCESSING GARAGE | 5201 CSI Bill Johnson |
| 00054 | PIECE OF METAL (POSSIBLE TIP OF KNIFE) COLLECTED FROM DRIVER'S SIDE FLOORBOARD OF WHITE CHEVY SILVERADO TRUCK CA. LIC #8H108 | LAB | 10/09/2007 BI. PROCESSING GARAGE | 5201 CSI Bill Johnson |
| 00055 | 38 DIGITAL PHOTOS TAG #177147 THE PHOTOGRAPHS WERE DOWNLOADED ONTO THE OXNARD POLICE DEPARTMENT DIGITAL DATABASE | Photo | 10/09/2007 BI. PROCESSING GARAGE | 5201 CSI Bill Johnson |

00546

| m | Item Description | Current Location | Date/Loc Siezed | Member |
|---|---|---|---|---|
| .056 | 1 METAL PART (POSS KNIFE BLADE) REMOVED FROM ITEM #22 | LAB | 10/09/2007 B.I. PROCESSING ROOM | 5201 CSI Bill Johnson |
| 00057 | 1 DNA SWAB FROM ITEM #56 COLLECTED FROM ITEM #56 | 187 | 10/09/2007 B.I. PROCESSING ROOM | 5201 CSI Bill Johnson |
| 00058 | DNA / BLANK SWAB FROM RED METAL CHISEL COLLECTED FROM ITEM #23 | 187 | 10/09/2007 B.I. PROCESSING ROOM | 5201 CSI Bill Johnson |
| 00059 | DNA SWAB COLLECTED FROM MISC METAL PARTS COLLECTED FROM ITEM #22 | 187 | 10/09/2007 B.I. PROCESSING ROOM | 5201 CSI Bill Johnson |
| 00060 | BUCCAL SWABS REFERENCE SWABS TAKEN FROM LUIS SIMEMTAL R/O OF CHEVY SIVERADO | 187 | 10/10/2007 OXNARD PD | 4804 Det Luis Mancha |
| 00061 | Interior and Exterior photos of the windows at 500 Hobson Wy #1 Downloaded into the Homicide and Property Drives as 0725163 500 Hobson 1 12-27-07 CS | Photo | 12/27/2007 500 Hobson Way #1 | 4671 Det Curtis Smith |

# Exhibit "2"

# COUNTY OF VENTURA
## SHERIFF'S DEPARTMENT
800 S. VICTORIA AVENUE VENTURA, CA 93009 (805) 654-2370
### FORENSIC SCIENCES LABORATORY REPORT

| | |
|---|---|
| **LAB CASE NUMBER** L07-6430 | **SUBJECT(S):** VICTIM: SALINAS, ANDREW SUSPECT: BARRERA, THOMAS |
| **REPORT NUMBER** 1 | **AGENCY:** OXNARD POLICE DEPARTMENT  Detective Chase |
| | **AGENCY CASE NUMBER:** 07-25163 / **OFFENSE(S):** 245 P.C. |

## FORENSIC BIOLOGY SECTION

EVIDENCE

Item 4 (Tag #07-002516300003): 6" FIXED BLADE KNIFE W/BROKEN TIP
Item 4A: Swab of knife handle
Item 4B: Swab of knife blade

Item 6 (Tag #07-002516300024): FOLDING KNIFE
Item 6A: Swab of portion of red brown stain on blade
Item 6B: Swab of handle

Item 7 (Tag# 07-002516300026): SWABS FROM "BMX" BIKE
Item 7A: Swabs from Mondel bar grips
Item 7A1: Sample
Item 7A2: Blank (not examined)
Item 7B: Swab from tape on bike seat
Item 7C: Swab from tape on flashlight on bike stem

Item 8 (Tag #07-002516300046): Reference sample from Thomas Barrera

Item 9 (Tag #07-002516300053) - (21) DNA SAMPLE/CONTROL & BLANK SWABS FROM TRUCK
Item 9A: Swabs from interior drivers side door lever
Item 9A1: Sample
Item 9A2: Control (not examined)
Item 9B: Swabs from steering wheel
Item 9B1: Sample
Item 9B2: Control (not examined)
Item 9C: Swabs from glove box (not examined)
Item 9D: Swabs from interior passenger side door handle/lever
Item 9D1: Sample
Item 9D2: Control (not examined)
Item 9E: Swabs from interior drivers side door handle/pull
Item 9E1: Sample
Item 9E2: Control (not examined)
Item 9F: Swabs from gearshift lever/knob
Item 9F1: Sample
Item 9F2: Control (not examined)
Item 9G: Swabs from interior passenger side door pull (not examined)
Item 9H: Swabs from ignition switch (not examined)

REVIEWED BY:   TR _____   AR _____

00555

em 9I: Swabs from exterior (not examined)
em 9J Swabs from exterior passenger side door handle (not examined)

Item 10 (Tag #07-002516300054)  PIECE OF METAL  (POSSIBLE TIP OF KNIFE) (Not analyzed for DNA)

Item 11 (Tag #07-002516300056)  ONE METAL PART (POSSIBLE KNIFE BLADE)
Item 11A: Swab of piece of metal

Item 12 (Tag #07-002516300060)  Reference sample from Luis Simental

Item 13 (Tag #07-002516300057)  SWAB FROM (POSSIBLE KNIFE BLADE)

Item 14 (Tag #07-002516300058) SWABS FROM RED METAL CHISEL
Item 14A: Sample
Item 14B: Blank (not examined)

Item 15 (Tag #07-002516300059): DNA SWAB COLLECTED FROM MISC METAL PARTS

## OBJECTIVE / METHODS

To examine items 4, 6, 10, 11 and 14A for the presence of blood.

To determine the STR DNA types from the evidence listed and compare to the STR DNA types from the reference samples from Thomas Barrera and Luis Simental (items 8 and 12).

his process entails extracting DNA from the samples. The extracted DNA was amplified using the polymerase chain action (PCR) and a DNA profile was obtained using the AmpF/STR COfiler™ and/or Profiler Plus™ Amplification Kits and the ABI Prism 310 Genetic Analyzer at the following Short Tandem Repeat (STR) loci: D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, THO1, TPOX, CSF1PO and the gender marker amelogenin

## RESULTS

The presence of blood was not detected on items 4, 10, 11 and 14A.

The presumptive presence of blood was detected on the blade of item 6.

Due to an insufficient amount of DNA, STR typing was not performed on items 7B, 9A1, 9E1, 11A, 13 and 15

The results from the reagent blanks and positive and negative amplification controls were as expected.

## CONCLUSIONS

Thomas Barrera is the source of the DNA from the swab of the knife handle, the portion of the red brown stain on the blade and the swab from the red metal chisel (items 4A, 6A and 14A). This conclusion is based on the assumption that Thomas Barrera does not have an identical twin. The approximate frequency of randomly selected, unrelated individuals that would be included as possible DNA contributors to items 4A, 6A and 14A is 1 in 1.7 quintillion African Americans, 1 in 47 quadrillion Caucasians and 1 in 8.1 quadrillion Hispanics.[1,2]  Luis Simental is excluded as a possible source of this DNA.

he DNA obtained from the swab of the handle (item 6B) is a mixture from at least two individuals. A major DNA ontributor profile was determined. Thomas Barrera is included as a possible source of this major contributor DNA. Assuming a single contributor, the approximate frequency of randomly selected, unrelated individuals that would be ncluded as a possible major DNA contributor to item 6B is 1 in 3 trillion African Americans, 1 in 230 billion Caucasians

PRINTED: 11/28/2007 3:39 PM

REVIEWED BY:   TR _____   AR _____

00556

Report Number 1

...nd 1 in 110 billion Hispanics.[1,3]  No conclusion regarding the source of the minor alleles detected will be offered due to ...he limited amount of data available. Luis Simental is excluded as a possible contributor to this DNA mixture.

DNA profiles were not obtained from the swabs from the Mondel bar grips (item 7A1) and the swabs from interior passenger side door handle/lever (item 9D1). Alleles were detected at a few loci for each item but not enough data was collected to determine the sources of these DNA samples.

The DNA obtained from the swabs from the tape on flashlight on the bike stem (item 7C) is a mixture from at least two individuals. A major DNA contributor profile was determined. Thomas Barrera is the major DNA contributor to this sample. This conclusion is based on the assumption that Thomas Barrera does not have an identical twin. The approximate frequency of randomly selected, unrelated individuals that would be included as a possible major DNA contributor to item 7C is 1 in 15 trillion African Americans, 1 in 1.3 trillion Caucasians and 1 in 630 billion Hispanics.[1,3] No conclusion regarding the source of the minor alleles detected will be offered due to the limited amount of data available. Luis Simental is excluded as a possible contributor to this DNA mixture.

A partial DNA profile was obtained from the swabs from steering wheel (item 9B1). Assuming a single DNA contributor both Thomas Barrera and Luis Simental are excluded as possible sources of this DNA.

A partial DNA profile was obtained from the swabs from gearshift lever/knob (item 9F1). Assuming a single DNA contributor Luis Simental is included as a possible source of this DNA. The approximate frequency of randomly selected, unrelated individuals that would be included as possible DNA contributors to item 9F1 is 1 in 19 thousand African Americans, 1 in 50 thousand Caucasians and 1 in 29 thousand Hispanics.[1,4]  Thomas Barrera is excluded as a possible contributor to this DNA sample.

A partial DNA profile was obtained from the swab of knife blade (item 4B).  Assuming a single DNA contributor, Thomas ^arrera is included as a possible source of this DNA. The approximate frequency of randomly selected, unrelated ...dividuals that would be included as possible DNA contributors to item 4B is 1 in 13 billion African Americans, 1 in 2 ...illion Caucasians and 1 in 16 billion Hispanics.[1,5] Luis Simental is excluded as a possible contributor to this DNA sample.

[1]DNA profile frequencies are calculated using population data taken from the Federal Bureau of Investigation's 1999 publication entitled "Population Data on the Thirteen CODIS Core Short Tandem Repeat Loci in African Americans, U.S. Caucasians, Hispanics, Bahamians, Jamaicans and Trinidadians". A theta value of .01 was used in accordance with recommendation 4.1 from the 1996 National Research Council Report.

[2] Population frequencies were calculated for randomly selected, unrelated individuals using the D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, THO1, TPOX and CSF1PO loci.

[3] Population frequencies were calculated for randomly selected, unrelated individuals using the D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818, D13S317 and D7S820 loci.

[4] Population frequencies were calculated for randomly selected, unrelated individuals using the D3S1358, vWA, D8S1179 and D5S818 loci.

[5] Population frequencies were calculated for randomly selected, unrelated individuals using the D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818 and D13S317 loci.

## DISPOSITION OF EVIDENCE

Item 4 was returned to the Ventura County Sheriff's Department Property Room. Items 4A and 4B were consumed during analysis. All extracted and amplified DNA was discarded.

...m 6 was returned to the Ventura County Sheriff's Department Property Room. Items 6A and 6B were consumed during ...alysis. All extracted and amplified DNA was discarded.

Items 7A, 7A1, 7A2, 7B and 7C were returned to their parent item 7. Item 7 was returned to the Ventura County Sheriff's Department Property Room. The extracted DNA from item 7A1 was consumed during analysis and the amplified DNA

PRINTED: 11/28/2007 3:39 PM

REVIEWED BY:   TR _____   AR _____

00557

was discarded. Item 7B was consumed during analysis and the extracted DNA was submitted to the Ventura County Sheriff's Department Property Room as item 7B1. Item 7C and the extracted DNA from item 7C were consumed during analysis. The amplified DNA will be stored in the Forensic Biology Amp Room Freezer.

Items 8 and 12 were returned to the Ventura County Sheriff's Department Property Room. All extracted and amplified DNA was discarded

Items 9A, 9A2, 9B, 9B2, 9C, 9D, 9D2, 9E, 9E2, 9F, 9F2, 9G, 9H, 9I and 9J were returned to their parent item 9. Item 9 was returned to the Ventura County Sheriff's Department Property Room. Item 9A1 was consumed during analysis and the extracted DNA from item 9A1 was submitted to the Ventura County Sheriff's Department Property Room as item 9A1A. Item 9B1 and the extracted DNA from item 9B1 were consumed during analysis. The amplified DNA will be stored in the Forensic Biology Amp Room Freezer. Item 9D1 and the extracted DNA from item 9D1 were consumed during analysis. The amplified DNA will be stored in the Forensic Biology Amp Room Freezer. The extracted DNA was submitted to the Ventura County Sheriff's Department Property Room as item 9E1A. Item 9E1 was consumed during analysis. Item 9F1 and the extracted DNA from item 9F1 were consumed during analysis. The amplified DNA will be stored in the Forensic Biology Amp Room Freezer.

Item 10 was returned to the Ventura County Sheriff's Department Property Room.

Item 11 was returned to the Ventura County Sheriff's Department Property Room. Item 11A was consumed during analysis and the extracted DNA was submitted to the Ventura County Sheriff's Department Property Room as item 11A1

The empty packaging for item 13 was returned to the Ventura County Sheriff's Department Property Room. Item 13 was consumed during analysis and the extracted DNA was submitted to the Ventura County Sheriff's Department Property Room as item 13A.

Items 14 and 14B were returned to the Ventura County Sheriff's Department Property Room. Item 14A was consumed during analysis. The extracted DNA was submitted to the Ventura County Sheriff's Department Property Room as item 14A1.

The empty packaging for item 15 was returned to the Ventura County Sheriff's Department Property Room. Item 15 was consumed during analysis and the extracted DNA was submitted to the Ventura County Sheriff's Department Property Room as item 15A

Jill Nguyen    11/28/07
Jill Nguyen
Forensic Scientist

REVIEWED BY:   TR _____   AR _____

00558

# Exhibit "3"

# COUNTY OF VENTURA
# SHERIFF'S DEPARTMENT
800 S. VICTORIA AVENUE VENTURA, CA 93009 (805) 654-2370
## FORENSIC SCIENCES LABORATORY REPORT

| SUBJECT(S): |  |
|---|---|
| VICTIM: SALINAS, ANDREW<br>SUSPECT: BARRERA, THOMAS |  |

| AGENCY: |  |
|---|---|
| OXNARD POLICE DEPARTMENT: Detective Chase |  |

| LAB CASE NUMBER<br>L07-6430 |
|---|
| REPORT NUMBER<br>3<br>JBW |

| AGENCY CASE NUMBER:<br>07-25163 | OFFENSE(S):<br>245 P.C. |
|---|---|

## FORENSIC BIOLOGY SECTION

### EVIDENCE

Item 5 (07-002516300008): Pittsburgh Multi Allen Wrench Tool
Item 5A: Swab of multi-tool

### OBJECTIVE / METHODS

To determine the STR DNA types from the swab of the multi-tool (item 5A) and compare these to the previously determined DNA types obtained from the reference sample taken from Thomas Barrera (item 8 see Report Number 1).

This process entails extracting DNA from the samples. The extracted DNA was amplified using the polymerase chain reaction (PCR) and a DNA profile was obtained using the AmpFlSTR COfiler™ and Profiler Plus™ Amplification Kits and the ABI Prism 310 Genetic Analyzer at the following Short Tandem Repeat (STR) loci: D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, THO1, TPOX, CSF1PO and the gender marker amelogenin.

### RESULTS

The results from the reagent blanks and positive and negative amplification controls were as expected

### CONCLUSIONS

The DNA obtained from the swab of the multi-tool (item 5A) is a mixture from at least four individuals. Thomas Barrera is included as a possible contributor to this mixture. The approximate frequency of randomly selected, unrelated individuals that would be included as possible DNA contributors to this mixture is 1 in 9.0 African Americans, 1 in 6.9 Caucasians and 1 in 7.7 Hispanics.[1,2]

[1]DNA profile frequencies are calculated using population data taken from the Federal Bureau of Investigation's 1999 publication entitled "Population Data on the Thirteen CODIS Core Short Tandem Repeat Loci in African Americans, U.S. Caucasians, Hispanics, Bahamians, Jamaicans and Trinidadians". A theta value of .01 was used in accordance with recommendation 4.1 from the 1996 National Research Council Report.

Population frequencies were calculated for randomly selected, unrelated individuals using the D3S1358, vWA, D8S1179, D21S11, D5S818, D13S317, THO1 and TPOX loci.

---

REVIEWED BY:   TR _____   AR _____

00562

DISPOSITION OF EVIDENCE

Item 5 was returned to Forensic Scientist Kristin Rogahn. Item 5A was consumed during analysis. The remaining extracted DNA was submitted to the Ventura County Sheriff's Department Property Room as item 5A1  All amplified DNA was discarded.

_____  2/12/08

Jill Nguyen
Forensic Scientist

00563

# Exhibit "4"

# COUNTY OF VENTURA
# SHERIFF'S DEPARTMENT
800 S. VICTORIA AVENUE VENTURA, CA 93009 (805) 654-2370
## FORENSIC SCIENCES LABORATORY REPORT

---

| LAB CASE NUMBER<br>L07-6430 | SUBJECT(S):<br>VICTIM:     SALINAS, ANDREW<br>SUSPECT:   BARRERA, THOMAS |
|---|---|
| | AGENCY:<br>OXNARD POLICE DEPARTMENT – Det. Joe Chase<br>D.A.'s OFFICE – D.D.A. Richard Simon |
| REPORT NUMBER<br>2 | AGENCY CASE NUMBER:<br>07-25163 |
| | OFFENSE(S):<br>245 P.C. |

### TRACE SECTION

**EVIDENCE:**

The following items were received from property:

item #004 (Agency #3) - FIXED BLADE KNIFE WITH BROKEN TIP

item #005 (Agency #8) - PITTSBURGH MULTI ALLEN WRENCH TOOL

Lab item #010 (Agency #54) - PIECE OF METAL

Lab item #011 (Agency #56) - PIECE OF METAL

Lab item #016 (Agency #18) - UNIFORM SHIRT

Lab item #017 (Agency #19) - UNIFORM PANTS

Lab item #018 (Agency #29) - "ANCHOR BLUE" JEANS WORN BY SUSPECT

Lab item #019 (Agency #34) - BLUE "BIC" LIGHTER, MULTI TOOL ALLEN WRENCH

Lab item #020 (Agency #36) - BLOOD STAINED BLACK T-SHIRT (not examined)

Lab item #021 (Agency #37) - WHITE "SOUTH POLE" BLOOD STAINED T-SHIRT (not examined)

Lab item #022 (Agency #38) - WHITE "NAUTICA" BLOOD STAINED TANK TOP (not examined)

Lab item #023 (Agency #39) - BROWN PAPER BAG FROM SUSPECT'S RIGHT HAND (not examined)

item #024 (Agency #40) - BROWN PAPER BAG FROM SUSPECT'S LEFT HAND (not examined)

of digital photographs received from OXPD Det. Chase

PRINTED: 3/5/2008 2:12 PM

REVIEWED BY:    TR  *ALG* 3-5-08 AR 3-5-08 *VE*

00559

OBJECTIVE:

1) To examine the allen wrench tool (item #5) for the presence of blue wool fibers.

2) To determine if blue wool fibers from the uniform (#16 and #17) were deposited on the allen wrench tool (#5) due to contact between the tool and the uniform.

3) Examine the other fibers or trace evidence recovered from the allen wrench tools (#5 and #19), the suspect's pockets (#18), and the uniform's pockets (#17) in order to locate other evidence regarding the original environment of the allen wrench tool (item #5).

4) To determine if the metal pieces (#10 and #11) could have originally been part of the knife (#4).


RESULTS:

1) Examination of the tool (item #5) located many fibers, most of which were dark in color. Over 60 blue fibers were recovered. Five of these 60 fibers were a dark, purple-blue wool fiber.

2) Some of the purple-blue wool fibers recovered from the tool (#5), from the pockets of the uniform pants (#17), and from the pockets of the suspect's jeans (#18) were similar in color and microscopic appearance. In addition, the fibers from these three sources exhibited similar levels of weathering and fraying, characteristic of fibers seen in pocket lint. However, not all of the fibers recovered from the tool (#5) showed excessive fraying. No extensive fraying was seen in standard fibers from the uniform (#16 and #17).

3) A red and black polymeric material was located in the pockets of the suspect's jeans (#18), as well as in the trace evidence recovered from both of the allen wrench tools (#5 and #19). The red material from these three items was similar in terms of color, texture, physical characteristics, and chemical composition (the black material was not tested). No red and black polymeric material was seen in the pockets of the uniform pants (#17).
In addition, the general appearance of other debris from the allen wrench tools was similar to the debris from the suspect's pockets, and unlike the debris from the pockets of the uniform.

4) The metal pieces (#10 and #11) showed similarity in terms of size, edge contour, physical appearance and continuity of random striations with the knife blade (#4).


INTERPRETATIONS:

1) Blue wool fibers were located on the allen wrench (item #5). The uniform (#16 and #17) was also made of blue wool.

2) No conclusion could be reached regarding whether the blue wool fibers from the allen wrench (#5) were deposited as a result of direct contact with the uniform. The blue wool fibers on the allen wrench could share a common source with the fibers from the uniform (#16 and #17), with the fibers from the pockets of the uniform (#17), with the fibers from the suspect's pockets (#18), or with any other source of similar blue wool fibers.

REVIEWED BY: TR _KMG 3·5·08_ AR _3·5·08 ✓_

00560

3) Based on the trace evidence located in the suspect's pockets, there is very strong support that the allen wrench (item #5) came from the suspect's pocket, and not the pocket of the uniform (#17).

4) Items #10, #11, and #4 were all one knife.

COMMENTS:

Analyses and comparisons were conducted using visual, microscopic, spectroscopic, and infrared techniques.

_Kristin Rogahn  3 5 08_

KRISTIN ROGAHN
FORENSIC SCIENTIST

# Exhibit

# "5"

# REQUEST FOR ANALYSIS

| Arrested/Suspect (Last, First) DOB | Victim/Reporting Person (Last, First) | Offense 245(A) VC |
|---|---|---|
| CASRELLA, THOMAS 5 | SILVA, ANDREW | Date of Offense 10-05-7 |

| Investigating Agency | Investigating/Requesting Officer(s) CHASE/MARCHA | New Case ☑ Additional Exhibits |
|---|---|---|
| OXNARD PD | Telephone # 385-7663 | Related Cases: |

| Agency File Number 07-21103 | Person Lab Report Should Be Sent To BARRETO - HARMAN | Is Subject In Custody? Yes; Date of Arrest ____ No |
|---|---|---|

## COURT INFORMATION

| Court Number | Court Date |
|---|---|
| Is exam needed for juvenile court? Yes (No) | |

### BLOOD ALCOHOL ONLY

Date and time of blood draw _____
Sterilizing agent used _____
Witnessing officer _____
Person drawing blood _____

Time of Arrest _____
Blood draw location (hospital) _____
CDL _____
Breath results #1 ____ time ____
results #2 ____ time ____

Details of Investigation (relevant portions of crime report may be attached) (for 11550 or 23152 cases-list suspected drugs only)

SUBJECT WAS OBSERVED BY SGT ANDREW CHASE. BREAKING INTO A VEHICLE. SUBJECT FLED FROM THE AREA HOLDING ... ... THE VEHICLE. SUSPECT THREW AN UNKNOWN ITEM ...

## VEHICLE SPECIFIC EXAMINATIONS REQUESTED

Gel Content          Firearms/Toolmarks Comparison     Body Fluid Identification
Toxicological Analysis     Operating Condition of Firearm     (DNA Testing)
Shoe Print/Tire Track     NIBIN     CODIS     Controlled Substances
Trace Evidence Examination   Other

Fingerprint processing requested?   Yes (No)   If yes and for vso, fill out BI service request
Have photographs been submitted?   Yes (No)   If yes and for vso, fill out Photo Lab request

| Controlled Substances |
|---|
| DA Approval (Signature Required) _____ |
| ☐ Case filed _____ |
| ☐ Case not filed pending lab _____ |
| ☐ Statute of limitations runs on _____ |
| ☐ Prop 36 case   yes   no |

## DESCRIPTION AND SPECIFIC EXAM REQUESTED

Exhibits (List items individually, use an Additional Exhibits form if required)

| Lab Item # | Agency Item # | | Presumptive Field Test (Drugs Only) |
|---|---|---|---|
| | 3 | 6" FIXED BLADE KNIFE W/BROKEN TIP MATCH ITEM'S #54 AND #56 TO KNIFE | |
| | 8 | PITTSBURGH MULTI ALLEN WRENCH TOOL. SWING FOR DNA + FIBER FROM UNIFORM | |
| | 24 | FOLDING KNIFE W/BLOOD. OBTAIN DNA TARGET COMPARE TO ITEM #46 | |
| | 26 | 5 SWABS FROM PMX. BIKE SWAB FROM GRIPS + TAR CONFIRM COMPARE TO ITEM #46 | |
| 46 | | DNA SAMPLE TO BE USED FOR COMPARISON, FTA CARD. | |

Signature of officer booking the evidence
(for vso main property room locker or across the counter)

Signature _____
Date 10/12/07 Time 0950 _____

| FOR INTERNAL USE ONLY |
|---|
| LABORATORY NUMBER _____ |
| CASE ASSIGNED TO _____ |
| DATE _____ |

SO 408 (6/06)     Distribution: white-sheriffs property   yellow-laboratory   pink-submitting agency

00549

# REQUEST FOR ANALYSIS (CONTINUATION FORM)

Agency     OXNARD
Agency Number     07-7163

| LAB Item # internal use | AGENCY Item # | DESCRIPTION AND SPECIFIC EXAM REQUESTED<br>Exhibits (List items individually, use an Additional Exhibits form if required) | Presumptive Field Test (Drugs Only) |
|---|---|---|---|
| | 53 | 21 DNA SAMPLES / CONTROL + BLANK SWABS FROM TRUCK. COMPARE TO ITEM # 46. | |
| | 54 | PIECE OF METAL (POSSIBLE TIP OF KNIFE) COMPARE TO ITEM # 3. | |
| | 56 | 1 METAL PART (POSS. KNIFE BLADE). COMPARE / MATCH TO ITEM # 3. | |
| | 60 | DNA, BUCCAL SWABS FROM SIMENTAL, LUIS (R/O OF TRUCK). ELIMINATION DNA. | |
| | 57 | 1 DNA SWAB FROM ITEM # 56. COMPARE # 46 | |
| | 58 | DNA / BLANK SWAB FROM RED METAL CHISEL. COMPARE TO ITEM # 46 | |
| | 59 | DNA SWAB COLLECTED FROM MISC. METAL. COMPARE TO ITEM # 46 | |

SO 409     Distribution:   white-sheriff's property    yellow-laboratory    pink-submitting agency

00550

# REQUEST FOR ANALYSIS

| d/Suspect (Last, First) DOB | Victim/Reporting Person (Last, First) | Offense 664/10851 V.C. 417.8 PC 245(C) PC |
|---|---|---|
| BARRERA THOMAS 5/8/85 | SALINAS, ANDREW (SGT) | Date of Offense 10/3/07 |

| Investigating Agency | Investigating/Requesting Officer(s) | New Case   (Additional Exhibits) |
|---|---|---|
| OXNARD PD | DET JOE CHASE 2493 | Related Cases: |
| | Telephone # 385 7663 | |

| Agency File Number | Person Lab Report Should Be Sent To | Is Subject In Custody? |
|---|---|---|
| 27-25163 | DET JOE CHASE 2493 | Yes; Date of Arrest _____  (No) |

**COURT INFORMATION**

**BLOOD ALCOHOL ONLY**

| Court Number | Court Date | |
|---|---|---|
| N/A | | Date and time of blood draw _____ |
| Exam needed for juvenile court? Yes No | | Sterilizing agent used _____ |
| | | Witnessing officer _____ |
| | | Person drawing blood _____ |

Time of Arrest _____
Blood draw location (hospital) _____
CDL _____
Breath   results #1 _____ time _____
         results #2 _____ time _____

**Details of Investigation** (relevant portions of crime report may be attached)   (for 11550 or 23152 cases-list suspected drugs only)

SUSPECT IS ATTEMPTING TO STEAL VEHICLE AND OBSERVED BY OFFICER. SUSPECT FLEES FROM AREA AND IS CHASED BY OFFICER. SUSPECT SWINGS KNIFE AT OFFICER AND OFFICER FIRES WEAPON AT SUSPECT KILLING SUSPECT

## CIRCLE SPECIFIC EXAMINATIONS REQUESTED

Alcohol Content          Firearms/Toolmarks Comparison          Body Fluid Identification
Toxicological Analysis   Operating Condition of Firearm          DNA Testing
Foot Print/Tire Track    NIBIN          CODIS          Controlled Substances
(Evidence Examination)   Other

Fingerprint processing requested?   Yes (No)   If yes and for vso, fill out BI service request
Have photographs been submitted?    Yes (No)   If yes and for vso, fill out Photo Lab request

**Controlled Substances**

DA Approval (Signature Required)

☐ Case filed _____
☐ Case not filed pending lab _____
☐ Statute of limitations runs on _____
☐ Prop 36 case   yes   no

## DESCRIPTION AND SPECIFIC EXAM REQUESTED

Exhibits (List items individually, use an Additional Exhibits form if required)

| LAB Item # | AGENCY Item # | (Criminal Case) | | Presumptive Field Test (Drugs Only) |
|---|---|---|---|---|
| | 18 | ONE "FLYING CROSS" UNIFORM SHIRT WORN BY SGT. SALINAS | | |
| | 19 | ONE PAIR OF "ELBECO" UNIFORM PANTS WORN BY SGT. SALINAS | | |
| | | EXAM - EXAM FIBERS ITEMS 18 + 19 TO FIBERS FOUND ON ITEM 8 THAT WAS PREVIOUSLY SUBMITTED | | |

Signature of officer booking the evidence
ONLY for vso main property room locker or across the counter)

Signature _____
Date 12/26/07   Time 1505

**FOR INTERNAL USE ONLY**

LABORATORY NUMBER _____
CASE ASSIGNED TO _____
DATE _____

SO 408 (6/06)          Distribution:  white-sheriff's property   yellow-laboratory   pink-submitting agency

00551

# REQUEST FOR ANALYSIS

| _d/Suspect (Last, First) DOB | Victim/Reporting Person (Last, First) | Offense |
|---|---|---|
| BARRERA, THOMAS 5/8/85 | SALINAS ANDREW (SGT) | Date of Offense |

| _nvestigating Agency | Investigating/Requesting Officer(s) | New Case    Additional Exhibits |
|---|---|---|
| OXNARD P.D | DET. JOE CHASE 2493 | Related Cases: |
|  | Telephone #  385-7663 | |

| _gency File Number | Person Lab Report Should Be Sent To | Is Subject In Custody? |
|---|---|---|
| 07-25163 | DET JOE CHASE 2493 | Yes; Date of Arrest _____  No |

**COURT INFORMATION**

| _ourt Number        Court Date: | BLOOD ALCOHOL ONLY | Time of Arrest |
|---|---|---|
| N/A | Date and time of blood draw_____ | Blood draw location (hospital)_____ |
| _ exam needed for juvenile court?  Yes   No | Sterilizing agent used_____ | CDL |
|  | Witnessing officer_____ | Breath   results #1 ____ time ____ |
|  | Person drawing blood_____ | results #2 ____ time ____ |

_Details of Investigation (relevant portions of crime report may be attached)    (for 11550 or 23152 cases-list suspected drugs only)

SUSPECT IS ATTEMPTING TO STEAL A VEHICLE AND IS BUMPED BY OFFICER.
SUSPECT FLEES FROM AREA AND IS CHASED BY OFFICER. SUSPECT SWINGS
KNIFE AT OFFICER AND OFFICER FIRES WEAPON AT SUSPECT, KILLING SUSPECT

**_RTICLE SPECIFIC EXAMINATIONS REQUESTED**

| | | |
|---|---|---|
| _t Content | Firearms/Toolmarks Comparison | Body Fluid Identification |
| _xicological Analysis | Operating Condition of Firearm | DNA Testing |
| _e Print/Tire Track   NIBIN   CODIS | | Controlled Substances |
| _e Evidence Examination Other _____ | | |

_ingerprint processing requested?   Yes  No    If yes and for vso, fill out BI service request
_e photographs been submitted?  Yes  No    If yes and for vso, fill out Photo Lab request

| Controlled Substances |
|---|
| DA Approval (Signature Required) |
| ☐ Case filed _____ |
| ☐ Case not filed pending lab _____ |
| ☐ Statute of limitations runs on _____ |
| ☐ Prop 36 case   yes   no |

## DESCRIPTION AND SPECIFIC EXAM REQUESTED
Exhibits (List items individually, use an Additional Exhibits form if required)

| LAB Item # | AGENCY Item # | Description | Presumptive Field Test (Drugs Only) |
|---|---|---|---|
| _nternal _se | 29 | 1 PAIR "ANGEL BLUE" JEANS WORN BY SUSPECT | |
|  | | EXAM REQUESTED: COMPARE FIBERS FROM PREVIOUSLY SUBMITTED ITEM TO FIBERS FOUND IN POCKETS AND ON THE PANTS BELONGING TO SUSPECT — (ITEM 8) | |

_nature of officer booking the evidence
LY for vso main property room locker or across the counter)

_ature _____    Date 12/11/07  Time 13:19

**FOR INTERNAL USE ONLY**

LABORATORY NUMBER
CASE ASSIGNED TO
DATE

00552

# REQUEST FOR ANALYSIS

| d/Suspect   (Last, First)   DOB | Victim/Reporting Person   (Last, First) | Offense |
|---|---|---|
| ARREIRA, THOMAS  5/8/85 | SALINAS ANDREW (SGT) | Date of Offense |

| Investigating/Requesting Officer(s) | New Case   (Additional Exhibits) |
|---|---|
| OXNARD P.D | DET JOE CHASE 2493 | Related Cases: |
| | Telephone #  3857663 | |
| ency File Number | Person Lab Report Should Be Sent To | Is Subject In Custody? |
| 07-25163 | DET JOE CHASE 2493 | Yes;  Date of Arrest          (No) |

| URT INFORMATION | BLOOD ALCOHOL ONLY | Time of Arrest |
|---|---|---|
| urt Number   Court Date: | Date and time of blood draw | Blood draw location (hospital) |
| N/A | Sterilizing agent used | CDL |
| exam needed for juvenile court?   Yes   No | Witnessing officer | Breath   results #1 ___ time |
| | Person drawing blood | results #2 ___ time |

tails of Investigation (relevant portions of crime report may be attached)          (for 11550 or 23152 cases-list suspected drugs only)

SUSPECT IS ATTEMPTING TO STEAL A VEHICLE AND IS OBSERVED BY
OFFICER. SUSPECT FLEES FROM AREA AND IS CHASED BY OFFICER.
USPECT SWINGS KNIFE AT OFFICER AND OFFICER FIRES WEAPON
T SUSPECT, KILLING SUSPECT.

## PLE SPECIFIC EXAMINATIONS REQUESTED

| | | |
|---|---|---|
| Content | Firearms/Toolmarks Comparison | Body Fluid Identification |
| ecological Analysis | Operating Condition of Firearm | DNA Testing |
| e Print/Tire Track | NIBIN | CODIS | Controlled Substances |
| e Evidence Examination\Other ___ | | |

| Controlled Substances |
|---|
| DA Approval (Signature Required) |
| ☐ Case filed _____ |
| ☐ Case not filed pending lab _____ |
| ☐ Statute of limitations runs on _____ |
| ☐ Prop 36 case   yes      no |

gerprint processing requested?   Yes   No      If yes and for vso, fill out BI service request
- photographs been submitted?   Yes   No      If yes and for vso, fill out Photo Lab request

| LAB # | AGENCY item # | DESCRIPTION AND SPECIFIC EXAM REQUESTED   Exhibits (List items individually, use an Additional Exhibits form if required) | | Presumptive Field Test (Drugs Only) |
|---|---|---|---|---|
| rmal se | 34 | BLUE "BIC LIGHTER" MULTI-TOOL ALLEN WRENCH, COLLECTED FROM RIGHT FRONT POCKET OF SUSPECTS PANTS | | |
| | 36 | 1 BLACK BLOOD STAINED T-SHIRT, COLLECTED FROM SUSPECTS BODY AT AUTOPSY | | |

| nature of officer booking the evidence | FOR INTERNAL USE ONLY |
|---|---|
| Y for vso main property room locker or across the counter) | |
| nature _____ | LABORATORY NUMBER _____ |
| Date _____  Time 1074 | CASE ASSIGNED TO _____ |
| | DATE _____ |

SO 408 (6/06)          Distribution:  white-sheriff's property   yellow-laboratory   pink-submitting agency

00553

# REQUEST FOR ANALYSIS (CONTINUATION FORM)

Agency
Agency Number

*OXNARD PD*
*07-25163*

| LAB Item # (internal use) | AGENCY Item # | DESCRIPTION AND SPECIFIC EXAM REQUESTED<br>Exhibits (List items individually, use an Additional Exhibits form if required) | Presumptive Field Test (Drugs Only) |
|---|---|---|---|
| | 37 | 1 WHITE BLOOD STAINED "SOUTH POLE" T-SHIRT, COLLECTED FROM SUSPECT'S BODY AT AUTOPSY | |
| | 38 | 1 WHITE "NAUTICA" BLOOD STAINED TANK TOP, COLLECTED FROM SUSPECT'S BODY AT AUTOPSY | |
| | 39 | 1 BROWN PAPER BAG FROM SUSPECT'S RIGHT HAND, COLLECTED FROM SUSPECT'S BODY AT AUTOPSY | |
| | 40 | 1 BROWN PAPER BAG FROM SUSPECT'S LEFT HAND, COLLECTED FROM SUSPECT'S BODY AT AUTOPSY | |
| | | EXAM REQUESTED: EXAMINE FOR FIBERS AND COMPARE FIBERS TO PREVIOUSLY SUBMITTED ITEMS ADDITIONAL ITEMS REQUESTED BY CRIME LAB PERSONNEL | |

HASE    1·9·01    TO75 - JACOBSEN

SO 409      Distribution:  white-sheriff's property    yellow-laboratory    pink-submitting agency

00554

# Exhibit "6"

DANIEL C. MORGAN & ASSOCIATES
ATTORNEYS AT LAW

OFFICE: (805) 815-4610
E-FAX: (805) 900-1880

1591 SPINNAKER DRIVE
SUITE 205
VENTURA, CALIFORNIA 93001

E-MAIL:
DANIELMORGANLAW@AOL.COM

November 12, 2007

OXNARD POLICE DEPARTMENT
251 S. "C" Street
Oxnard, CA 93030

Re: Barrera, Este of Tomas Barrera,et al v.City of Oxnard, Andrew Salinas

Dear Custodian of Records:

Please be advised that this office has been retained to represent Tomas Barrera, the father of Tomas Barrera Jr. who was shot and killed by Officer Andrew Salinas on October 4, 2007, at 5th and G Streets in Oxnard, California.

We hereby formally request that you preserve the following evidence in their original condition:

1. All audio recordings of telephone communications regarding the subject incident;

2. All documents pertaining to the CAD system regarding the subject incident;

3. All physical evidence, including bullets removed from the victim, shell casings, the gun used in the subject incident, and any other physical evidence gathered at the scene;

4. All car to car recordings regarding the subject incident;

5. All reel to reel recordings regarding the subject incident;

6. All photographs taken at the scene of the shooting; and

7. All recorded statements taken by any witnesses.

Please be advised that failure to preserve the items identified above in their immediate post-accident condition may result in liability for willful destruction of evidence. Your failure to preserve this evidence, without modifying, altering, or destroying the evidence, may subject you to substantial civil monetary damages. Be advised that we intend to seek remedies against you if you allow crucial evidence in this case to be modified, altered or destroyed.

Post-It® Fax Note   7671

| | Date 11-19-07 | # of pages ▶ |
| To Jim Fichter | From Ben Chavez |
| Co./Dept. | Co. |
| Phone # 278 0289 | Phone # 385 7761 |
| Fax # | Fax # |

00476

Mr. Daniel Morgan
Re: Barrera, Este of Tomas Barrera,et al v.City of Oxnard, Andrew Salinas
November 12, 2007
Page 2


Please advise us immediately of the status of the evidence and your office's intentions with respect to its preservation. If your office will not agree to preserve the evidence, we are hereby offering to transport it to our secured storage facility and pay related storage costs so that the evidence is preserved.

At this time, we request an opportunity to conduct an inspection for the purpose of photographing, copying, recording, and/or videotaping all of the aforementioned items of evidence. Please contact the undersigned upon receipt of this letter to discuss disposition of the evidence.

We ask that you direct any future communications and/or correspondence to the undersigned. Please do not contact our client personally.

Thank you for your anticipated courtesy and cooperation in this matter. If you have any questions, please feel free to contact me.


Very truly yours,


Daniel Morgan, Esq.
DANIEL C. MORGAN & ASSOCIATES
Attorneys at Law

# Exhibit

# "7"

LAW OFFICES OF

# ALAN E. WISOTSKY

ALAN E. WISOTSKY
BRIAN P. KEIGHRON
JEFFREY HELD
JAMES S. EICHER, JR
DIRK DeGENNA

FINANCIAL PLAZA TOWER
300 ESPLANADE DRIVE, SUITE 1500
OXNARD, CALIFORNIA 93036

TELEPHONE (805) 278-0920
FACSIMILE (805) 278-0289
E-MAIL  lawyer@wisotskylaw.com
www.wisotskylaw.com

November 20, 2007

Daniel C. Morgan
Daniel C. Morgan & Associates
1591 Spinnaker Drive, Suite 205
Ventura, CA 93001

Re: <u>Barrera v. City of Oxnard, et al.</u>

Dear Mr. Morgan:

This is in response to your letter of November 12, 2007, to the custodian of records at the Oxnard Police Department regarding the above referenced matter.  This office represents the City of Oxnard, and, in particular, the Oxnard Police Department and Andrew Salinas with respect to this matter.

Your request for preservation of evidence is noted.  Your request to conduct an inspection for the purpose of photocopying, copying, etc., of the evidence gathered thus far in the case is denied.  The incident is still under investigation by the Oxnard Police Department and the Ventura County District Attorney's Office.

We shall comply with your request to communicate only with your office and expect the same professional and ethical commitment from you as it relates to the City of Oxnard, Oxnard Police Department, and Andrew Salinas.

Very truly yours,

ALAN E. WISOTSKY

AEW:jm

cc: Sgt. Ben Chavez, OXPD

**FILE COPY**

00478

# Exhibit

# "8"

# law offices of kim d. scovis

A Professional Corporation

Kim D. Scovis
Jenny Scovis

Arthur L. Scovis (1942-2004)

223 E. Thousand Oaks Blvd Suite 412
Thousand Oaks CA 91360
(805) 496-6413
Fax (805) 379 -3966

January 14, 2008

Gregory B. Bragg & Associates, Inc.
Attn: Peter Yee
P.O. Box 3544
Ventura, CA 93006-3544

Re: *Maria Lazos*

Dear Mr. Yee:

Pursuant to your request for documentation with regard to the above claimant, I have enclosed two pieces of correspondence requesting the same.

In the interim should you have any further questions, please do not hesitate to call. Thank you for the courtesy of your cooperation in this matter.

Sincerely,

Lauren Hochman
Legal Secretary

enc

# law offices of kim

A Professional Corporal

Kim D. Scovis
Jenny Scovis

Arthur L. Scovis (1942-2004)

January 7, 2008

**VIA U.S. CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Gregory D. Totten
VENTURA COUNTY DISTRICT ATTORNEY
800 South Victoria Avenue
Ventura, CA 93009

      Re:  *Maria Lazos*

Dear Mr. Totten:

Our offices represent Maria Lazos in her claims against certain public agencies and/or other entities and individuals in connection with the death of her son, Thomas Barrera, on October 3, 2007.  On that date, Mr. Barrera was shot several times and killed by Sergeant Andrew Salinas of the Oxnard Police Department.  It is our understanding that Sgt. Salinas was acting under color of law at the time of the incident and circumstances leading up to Mr. Barrera's death.

As you may or may not be aware, this firm filed a Claim Against Public Entity on behalf of Ms. Lazos, which identifies as Respondents those individuals and agencies involved in Mr. Barrera's death, including, but not limited to, the City of Oxnard, the Oxnard Police Department, Sgt. Salinas, and John Crombach, the acting Police Chief.  The claim alleges violations of certain federal and state civil rights and seeks damages under California tort law for the respondents' individual and/or collective acts and/or failures to act.

One of our objectives is to obtain a determination of the facts and circumstances surrounding Mr. Barrera's death.  In meeting that goal, we have retained and intend to engage forensic and other appropriate experts and consultants we believe are necessary to conduct a thorough investigation.

It is our understanding that your office has assigned certain of its deputy district attorneys in this matter.  The primary purpose of this correspondence is to request that any and all writings[1] that relate to the investigation of this incident, as well as any and all pertinent events prior to and

---

[1]    As defined in *California Evidence Code Section 250*, the term "*writing*" means handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

Gregory D. Totten
January 7, 2008
Page Two

subsequent the shooting, including all evidence, documentary or otherwise, which has been
obtained and/or is within your possession, custody and/or control, be made available for review
and/or inspection by our experts and consultants as soon as possible.

It is foreseeable that our experts will want to personally examine any and all evidence items.
With that in mind, we would respectfully request that no destructive testing be performed on any
evidence, to the extent allowable, that would destroy any evidence or otherwise render it
unusable for further forensic examination. If you or your agency cannot honor this request, it is
requested that we be given sufficient advance notification of any and all testing of evidence that
may be destructive and/or otherwise exhaust further examination. "Sufficient advance
notification" would permit the opportunity to seek judicial intervention in the event a court order
or other injunction becomes necessary.

Finally, we are requesting that a copy of the autopsy report of Thomas Barrera, together with any
associated documentation prepared in connection with this incident, be provided to us as soon as
possible. Your assistance in expediting that report to our offices is greatly appreciated. To that
end, the report may be sent via facsimile to 805/379-3966.

If you have any questions or need further information, please do not hesitate to give me a call. I
look forward to a prompt communication from your office in response to the foregoing.

Thank you for the courtesy of your cooperation in this matter.

Sincerely,

KIM D. SCOVIS

KDS/lrm

cc: Maria Lazos

Certified Mail No. 7007 0710 0003 7217 3588

## law offices of kin

A Professional Corpor

Kim D. Scovis
Jenny Scovis

Arthur L. Scovis (1942-2004)



January 7, 2008

**VIA U.S. CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

John Crombach, Police Chief
OXNARD POLICE DEPARTMENT
251 South "C" Street
Oxnard, CA 93030

Re: *Maria Lazos*

Dear Chief Crombach:

Our offices represent Maria Lazos in her claims against certain public agencies and/or other entities and individuals in connection with the death of her son, Thomas Barrera, on October 3, 2007. On that date, Mr. Barrera was shot several times and killed by Sergeant Andrew Salinas of the Oxnard Police Department. It is our understanding that Sgt. Salinas was acting under color of law at the time of the incident and circumstances leading up to Mr. Barrera's death.

As you may be aware, this firm filed a Claim Against Public Entity on behalf of Ms. Lazos, which identifies as Respondents those individuals and agencies involved in Mr. Barrera's death, including, but not limited to, the City of Oxnard, the Oxnard Police Department, Sgt. Salinas, and yourself as acting Police Chief. The claim alleges violations of certain federal and state civil rights and seeks damages under California tort law for the respondents' individual and/or collective acts and/or failures to act.

One of our objectives is to obtain a determination of the facts and circumstances surrounding Mr. Barrera's death. In meeting that goal, we have retained and intend to engage forensic and other appropriate experts and consultants we believe are necessary to conduct a thorough investigation.

The primary purpose of this correspondence is to request that any and all writings[1] that relate to the investigation of this incident, as well as any and all pertinent events prior to and subsequent the shooting, including all evidence, documentary or otherwise, which has been obtained and/or

---

[1] As defined in *California Evidence Code Section 250*, the term "*writing*" means handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored.

John Crombach
January 7, 2008
Page Two

is within your possession, custody and/or control, be made available for review and/or inspection by our experts and consultants as soon as possible.

It is foreseeable that our experts will want to personally examine any and all evidence items. Therefore, we are requesting that our experts be given immediate access to the vehicle (i.e., the pick-up truck) which we understand was involved when Sgt. Salinas allegedly first observed Mr. Barrera on the date the shooting occurred. It is also critical for our experts to have immediate access to the decedent's clothing at the time of this incident, any and all weapons allegedly discovered at the scene of the incident, any and all photographs or other depictions of the scene of the incident and/or of the decedent at any time, and/or any and all physical or other evidence purportedly related to this incident.

We would also respectfully request that no destructive testing be performed on any evidence, to the extent allowable, that would destroy any evidence or otherwise render it unusable for further forensic examination. If you or your agency cannot honor this request, it is requested that we be given sufficient advance notification of any and all testing of evidence that may be destructive and/or otherwise exhaust further examination. "Sufficient advance notification" would permit the opportunity to seek judicial intervention in the event a court order or other injunction becomes necessary.

Finally, we are requesting that a copy of the autopsy report of Thomas Barrera, together with any associated documentation prepared in connection with this incident, be provided to us as soon as possible. Your assistance in expediting that report to our offices is greatly appreciated. To that end, the report may be sent via facsimile to 805/379-3966.

If you have any questions or need further information, please do not hesitate to give me a call. I look forward to a prompt communication from your office in response to the foregoing.

Thank you for the courtesy of your cooperation in this matter.

Sincerely,

KIM D. SCOVIS

KDS/lrm

cc: Maria Lazos

Certified Mail No. 7007 0710 0003 7217 3571

1
## PROOF OF SERVICE

2       I am employed in the county of Ventura, State of California. I am over the age of

3  eighteen and not a party to the within action, and my business address is: Law Offices of Kim

4  D. Scovis, 223 E. Thousand Oaks Blvd., Suite 412, Thousand Oaks, CA 91360.

5       On June 26, 2009, I served the following document(s):

6  **PLAINTIFFS MOTION IN LIMINE NO. 9 TO EXCLUDE ANY EVIDENCE**

7  **PERTAINING TO THE 6" FIXED BLADE KNIFE, PIECE OF METAL (POSS**

8  **KNIFE BLADE); METAL CHISEL; ALLEN WRENCH TOOL SET; THE**

9  **FOLDING KNIFE, THE SYRINGE FOUND IN DECEDENT'S POCKET AND**

10  **THE SWABS FROM THE BMX BIKE**

11  on the interested parties in this action by placing a true and correct copy thereof enclosed in

12  a sealed envelope addressed as follows:

13  Law Office of Alan E. Wistosky          Law Office of Gregory A. Yates, P.C.
    Attention: Mr. Dirk DeGenna              Attn: Gregory Yates
14  300 Esplanade Drive, Suite 1500          16830 Ventura Blvd., #250
    Oxnard, CA 93036                         Encino, CA 91436
15

16                                           Daniel C. Morgan & Assoc.
                                             1591 Spinnaker Doctor., #205
17                                           Ventura, CA 93001

18
   X     I am readily familiar with the business' practice for collection and processing
19
         of correspondence and mailing with the United States Postal Service; such
20
         correspondence would be deposited with the United States Postal Service the
21
         same day of deposit in the ordinary course of business. I know that the
22
         envelope was sealed and, with postage thereon fully prepaid, placed for
23
         collection and mailing on this date, following ordinary business practices, in
24
         the United States mail at Thousand Oaks, California.
25
         Fed Ex overnight service.
26
   _____ By Personal Service, I caused such envelope to be delivered by hand to the
27
         above address(es).
28
   _____ By facsimile, I caused such document to be transmitted via facsimile

machine, to the above address(es)

_____ (State)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

__X__ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 26, 2009, at Thousand Oaks, California

Roschelle Ayonayon