Alan E. Wisotsky (SBN 68051)
Jeffrey Held (SBN 106991)
Dirk DeGenna (SBN 188972)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California  93036
Tel:     (805) 278-0920
Fax:     (805) 278-0289
E-mail:  lawyers@wisotskylaw.com

Attorneys for Defendants CITY OF OXNARD,
OXNARD POLICE DEPARTMENT, JOHN CROMBACH,
and ANDREW SALINAS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA LAZOS, et al., | No. CV 08-02987 RGK (SHx) |
| Plaintiffs, | [consolidated w/ No. CV 08-05153 RGK (SH)] |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 6; DECLARATION OF DEFENSE COUNSEL** |
| CITY OF OXNARD, et al., | |
| Defendants. | |
| AND CONSOLIDATED ACTION. | Date : August 11, 2009<br>Time : 9:00 a.m.<br>Ctrm : 850 Roybal |

Defendants hereby oppose plaintiffs' Motion in Limine No. 6 regarding exclusion of evidence of the defendant officer's early employment records.

**I.**

**PLAINTIFFS FAILED TO TIMELY MEET AND CONFER AS REQUIRED BY LOCAL RULE 7-3**

Plaintiffs failed to timely meet and confer. Pursuant to Local Rule 7-3, counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly the substance of the contemplated motion at least twenty (20) days

1

prior to the filing of the motion.  Pursuant to the Court's standing orders, motions in limine are to be filed and served a minimum of forty-five (45) days prior to the scheduled trial date of August 11, 2009, which is June 27, 2009.  Since June 27 is a Saturday, the motion is to be filed by June 26.  Based upon a June 26 filing date, any meet and confer effort would have to be completed by June 6, 2009 (twenty days prior).  Plaintiffs did not attempt to meet and confer by identifying the anticipated motions in limine until June 11, 2009 (Exhibit A).  The Court should note that plaintiffs' motion fails to include the requisite language of L.R. 7-3, advising the Court of the date of the meet and confer, obviously because it was untimely.  As such, because the motion is untimely, it should not be considered by the Court.

## II.

### INTRODUCTION

The plaintiffs' sixth motion in limine misses the point. Defendants will not need to refer to Officer Salinas's employment records as confidential because they will not be referring to them at all; these records cannot come into evidence.  The flaw in the motion's reasoning is that it assumes a fact not in evidence — namely, that the long-ago employment records of the defendant officer are admissible.  They are not.

The early employment records of the defendant officer are inadmissible for three reasons.  First, they constitute inadmissible character evidence (for example, the Ninth Circuit has held that even more recent, probative evidence, such as a shooting by the defendant officer close in time to the subject shooting, is inadmissible character evidence).  Second, the Supreme Court has

gone to lengths to emphasize the critical need for a close connection between the hiring decision and the challenged application of force in order to create *Monell* admissibility, and the Ninth Circuit has twice utilized that requirement to exclude remote hiring records. Third, the bifurcation of the *Monell* phase would limit the admissibility of these records, if they can be admitted at all, into the entity liability phase.

## III.

### THE NINTH CIRCUIT HAS EXCLUDED MUCH MORE RECENT, RELEVANT EVIDENCE AS INADMISSIBLE CHARACTER EVIDENCE

The material which the in limine motion assumes will be admissible pertains to remote hiring data about Sgt. Salinas's employment background variously between 10 and 15 years ago. Much more damning evidence of a recent nature was excluded by the Ninth Circuit as impermissible character data in a civil rights case.

The Ninth Circuit has made it crystal clear that conduct of officers on other occasions, even during their employment, of a highly similar nature is simply inadmissible. It invites the jury to judge the officer based upon other times and places rather than the facts of the instant episode.

In *Duran v. City of Maywood*, 221 F.3d 1127 (9th Cir. 2000), the district court was held to have properly excluded evidence about another shooting in which the defendant officer was involved only three days after the subject shooting. The *Duran* plaintiffs filed a civil rights lawsuit against a police officer and the employing municipality after the officer shot and killed their son. The jury returned a verdict for the defendants. On appeal, the

3

plaintiffs claimed that the district court erred when it excluded evidence of another shooting in which the same officer had been involved just three days after the subject shooting.

The *Duran* court explained at 1132-1133 that other-acts evidence would be admissible only if a five-part test were fully satisfied.

There must be sufficient proof for the jury to find that the defendant committed the other act. The other act must not be too remote in time. The other act must be introduced to prove a material issue in the instant case. The other act must involve comparably similar misconduct to that charged in the instant case. The probative value of the proffered evidence must not be substantially outweighed by the danger of unfair prejudice. 221 F.3d at 1133.

In *Duran*, the Ninth Circuit explained:

> In this case, the district court laid out this test and then stated that even if all the factors under Rule 404(b) were met, it believed that the evidence should be excluded under Rule 403 for two independent reasons. First, the marginally probative value of this evidence is substantially outweighed by the danger of unfair prejudice. Second, in order to admit evidence of the other shooting, the court would have to have a full-blown trial within this trial. The court noted that according to one of the Defendants' attorneys, an inquiry into the second incident would require the testimony of eighteen

4

to twenty-three witnesses, as well as no less than four experts.  The court therefore concluded that the marginal value of the evidence is substantially outweighed by the danger of confusion of the issues, or misleading the jury, or by consideration of undue delay, and waste of time.  Although we find the similarity between the two shootings troubling, we do not believe that the district court's decision to exclude the evidence amounts to an abuse of discretion.

221 F.3d at 1133.

The proffered evidence assumed to be admissible by the plaintiffs' sixth motion in limine involves remote hiring records of the defendant officer in this case.  Employment records and job applications some 15 years before the challenged shooting are much more remote in time than the shooting just three days after the subject shooting in the *Duran* case, which was held inadmissible.  The comparable nature of the conduct in the *Duran* case — a shooting — still did not make it admissible.  In this case, job applications and hiring records 15 years earlier are exponentially less comparable than the shooting was in the *Duran* case.

The third element — requiring that the other act must be introduced to prove a material issue in the present case — is not even marginally satisfied.  Sgt. Salinas here stands accused of unjustifiably firing a gun at a fleeing suspect who whirled to face him following a prolonged chase.  The proffered records involve criticisms of the teenage Salinas by various juvenile employers (late to work, didn't return an item of personal equipment, rude to

5

a customer, etc.) and the non-passage of a duty-ready assessment exam by a separate law enforcement agency years before he was employed by the defendant municipality, whose similar exam he did pass. These are ancient behavior examples, long predating his hiring by the defendant municipality, which are calculated to suggest conduct in conformity therewith on the subject occasion. This is inadmissible paradigm character evidence.

Character evidence is previous conduct — other-acts evidence — designed to show that the party must have acted a certain way on the subject occasion because he or she behaved badly before. But the Ninth Circuit walls out such evidence because the law does not judge a person now because of what he supposedly did then. *Cohn v. Papke*, 655 F.2d 191, 193 (9th Cir. 1981); *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993); *U.S. v. Geston*, 299 F.3d 1130, 1138 (9th Cir. 2002) [evidence of other bad acts offered to show a propensity toward violence held inadmissible].

There is nothing in this case making long-ago, callow indiscretions relevant to any issue in the current litigation. Therefore, the proffered evidence does not satisfy the third element of *Duran*. Nor is the fourth element satisfied, because the challenged conduct — shooting — is not comparably similar to the old, proffered evidence.

## IV.

### THE SUPREME COURT AND NINTH CIRCUIT HAVE BEEN EXTREMELY CIRCUMSPECT IN REJECTING REMOTE HIRING DATA AS NOT *MONELL* RELEVANT AT ALL

In hiring cases, causation is a rigorous requirement designed to prevent *Monell* liability from collapsing into common-law tort

respondeat superior.  The unstated premise of the sixth motion in limine is that when a police applicant has some negative data in his background investigation and some alleged callow personality shortcomings, these ought automatically to disqualify him or her from subsequent police service.  This is so, the unspoken premise continues, notwithstanding the passage of a dozen years, glowing commendations, promotions, and passage of the departmentally mandated psychological examination administered by an independent psychologist.

The fallacy with the theory that original hiring records are admissible is that the United States Supreme Court and several Ninth Circuit decisions find much closer links to in-service violence insufficient predictors of alleged future misconduct.  The *Monell* requirement of a close connection between alleged bad hiring and retention decisions has ruled out even several sustained on-duty findings of violence as not being the proximate cause of a later extreme outburst.

Judgment as a matter of law was granted and then affirmed in *Van Ort v. Stanewich*, 92 F.3d 831 (9th Cir. 1996).  The plaintiffs were tortured with lighter fluid by an off-duty officer who wanted to steal their jewelry and was torturing them to obtain the combination to their safe.  Having seen the valuable jewelry in a warrant raid sometime earlier, the off-duty officer squirted them with lighter fluid, covered their heads with pillowcases, and dragged the homeowners through the house to force them to tell him the combination to the safe.

The plaintiffs had done substantial discovery and were able to provide the district court with a detailed description of the

malefactor's quite considerable disciplinary record. Citizens had brought numerous complaints against the offending officer for use of excessive force and violence during detentions. Three of these were sustained. Other acts were disciplined. The department itself actually concluded that the officer did not possess the level of sophistication in judgment to function in his police duties. He was even transferred to allow for closer supervision.

Yet even with three sustained force complaints and explicit employer acknowledgment of the malefactor's unfitness for duty, the Ninth Circuit held, as a matter of law, that there was no *Monell* causation. "These facts do not show," stated the Ninth Circuit, "as a matter of law, that the County could have foreseen Stanewich's actions, which would establish the necessary causal link between the County's policy and the Van Orts' injuries." 92 F.3d at 837. While the offending officer's disciplinary record may have placed his supervisors on heightened alert that this officer could be violent and prone to use excessive force while on duty, the police employer could not have reasonably foreseen that he would mutate into a vicious freelance thug.

In *McDade v. West*, 223 F.3d 1135 (9th Cir. 2000), a county employee wanted to surreptitiously use her computer access codes to help her husband track down his former spouse in order to serve her with an order to show cause re modification of child custody and visitation. The former spouse was hidden in an unidentifiable battered women's shelter. But she was found, illegally, by the errant employee of the district attorney's office. The former spouse was served with the OSC, and she was evicted from the battered women's shelter. The employer conducted a thorough

8

investigation and then determined that its employee was at fault and fired her.

The plaintiff in the civil rights suit, the former spouse, contended that a close *Monell* link existed because of episodic violence directed at the former spouse by the county employee. Once she threw a rock through the former spouse's windshield while the former spouse was in the car. The employee pled guilty and was reprimanded by her employer. Just a few months later, the employee again attacked the plaintiff in a bar. The employer was again notified. She was again counseled, admonished, and ordered to pay restitution.

The Ninth Circuit rejected the *Monell* claim because there was no causation. McDade failed to demonstrate that the municipal employer could have foreseen the disclosure after being informed of these violent tendencies against the former spouse. "Indeed, there was no evidence that the County should have drawn a logical connection between the two." 223 F.3d at 1142. There was no direct causation.

Noting that hiring cases present the greatest danger of violating the causation requirement necessary to show a *Monell* violation, the Supreme Court wrote:

> Cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause. In the broadest sense, every injury is traceable to a hiring decision. Where a court fails to adhere to rigorous

>requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability. As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights.

*Board of County Commissioners v. Brown*, 520 U.S. 397, 415 (1997).

The egregiousness of the employer's misconduct in *Brown* was quite shocking. The sheriff in that case, who was the employer, wanted to hire his nephew, so nepotism was the motivating cause in turning a blind eye toward a very bad record. The nephew had been convicted several times of various offenses, including assault and battery. The sheriff testified in the civil rights trial that he should have actually read the background investigation, but he never did. Nevertheless, some assault and battery convictions during a police officer's callow years were held not to have a direct, proximate connection to his utilization of excessive force many years into his police service.

Certainly Sgt. Salinas had nothing of the sort — he has never been convicted of any crime. He has never assaulted or battered anyone without justification in the line of duty. Sgt. Salinas has never been found to have violated anyone's civil rights.

The proffered evidence is muckraking. It is the last desperate gasp of an extremely weak case. The fact that employers of Sgt. Salinas, during his teen years, thought that he arrived late for work or was insolent to a customer, have nothing to do

with any kind of connection to whether he deployed unjustified lethal force against the plaintiffs' decedent herein. There is no causation here, and under *Monell*, *Van Ort v. Stanewich*, *McDade v. West*, and *Board of County Commissioners v. Brown*, there is no direct, proximate link between the hiring data and the conduct challenged in this civil rights lawsuit. It is therefore utterly irrelevant to *Monell*.

**V.**

**ASSUMING, ARGUENDO, THAT THE PROFFERED EMPLOY-MENT RECORDS WERE ADMISSIBLE, THEY WOULD BE EXCLUSIVELY LIMITED TO THE SEPARATE *MONELL* PHASE**

A civil rights trial inquiring into the legitimacy of a search or seizure by a police officer is tightly focused on the propriety of the event in question, and extraneous inquiries which distract from the justification-seeking task of the jury are utterly foreign to such a focused inquiry. In a police force case, the only question to be resolved is whether, objectively, the use of force is excessive. *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993).

Character evidence is not admissible in a civil rights case. *Cohn v. Papke*, 655 F.2d 191, 193 (9th Cir. 1981). Intent, past conduct, and actions of the subject officer or other officers on other occasions are completely outside the purview of the force justification inquiry which actuates the liability assessment determination in search and seizure trials. *Arkansas v. Sullivan*, 532 U.S. 769 (2001) [improper subjective motivation of police officer for stopping defendant's vehicle irrelevant in Fourth Amendment case, and state Supreme Court could not inquire into

arresting officer's subjective motivation on the theory that it could interpret the United States Constitution more broadly than the Supreme Court]; *Gates v. Rivera, supra,* 993 F.3d at 700; *Duran v. City of Maywood, supra,* 221 F.3d at 1133; *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) ["In the instant case, plaintiff's strategy was to convince the jury to award him damages on the strength of evidence concerning police dog attacks on others"].

    Evidence of what the officer did on other occasions or what other officers did is admissible, if at all, in a bifurcated *Monell* phase (although, again, defendants emphasize that, based upon the preceding point heading, the absence of a causal connection of a direct nature would preclude introduction of ancient hiring records of a police officer in an excessive force case anyway under *Van Ort*, *McDade*, and *Brown*).  In *Quintanilla*, the district court utilized Federal Rule of Civil Procedure 42(b) to bifurcate the trial of the individual officers from the municipal decision-makers in order to avoid potential prejudice and confusion, as well as to facilitate judicial economy.  Prejudice was avoided because the officers on trial for having caused the seizure of the plaintiff were not to be tried for what they or other officers did on other occasions — the echo effect of past conduct, once admitted, is impossible to cauterize from the mind of the trier of fact.  The avoidance of confusion stems from the fact that the *Monell* formulation for entity liability has a number of its own quite confusing elements.  The plaintiff bears the burden of demonstrating that the municipality promoted, adopted, or ratified a deliberately indifferent custom, practice, or policy which created a direct causal

link to the constitutional violation.  *McDade, supra,* 223 F.3d at 1141.

There is a separate body of evidence which would be relevant in a *Monell* phase which is not relevant in the underlying phase. Judicial economy is easily achieved because if it is determined by the jury that there is no underlying constitutional violation, then it is also true that there need be no *Monell* phase. In the absence of an underlying constitutional violation, there is no *Monell* inquiry (for the reason that one of the indispensable *Monell* elements is that there have been a constitutional violation, and if there is no deprivation of civil rights, then there is no need to determine the other *Monell* elements).  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

**VI.**

**CONCLUSION**

It is therefore respectfully requested that the Court deny plaintiffs' sixth in limine motion because it assumes that the ancient hiring and employment records of the individual defendant would be admissible at all, which they would not be. They would not be admissible both because they are other-acts evidence violative of the rule excluding character evidence and because ancient hiring records cannot, under the appellate decisions cited, *Van Ort, McDade,* and *Brown,* demonstrate any direct causal link to establish a *Monell* violation in a search and seizure case. If the Court is inclined to allow such evidence, defendants respectfully

/ / /

/ / /

/ / /

request that such records be limited to reference only in the separate *Monell* phase, if necessary.

Dated: July ____, 2009

                                  LAW OFFICES OF ALAN E. WISOTSKY

By: _____
   DIRK DeGENNA
   Attorneys for Defendants,
   CITY OF OXNARD, OXNARD POLICE
   DEPARTMENT, JOHN CROMBACH, and
   ANDREW SALINAS

**DECLARATION OF DIRK DEGENNA**

I, Dirk DeGenna, declare as follows:

1. I am an attorney admitted to practice law before all the courts of the State of California and the United States District Court, Central District of California, and am an associate in the Law Offices of Alan E. Wisotsky, attorneys of record for defendants in this action. I make this declaration of my own personal knowledge, except as to the information declared on information and belief, and if called upon to testify, I could and would do so competently.

2. Plaintiffs' counsel did not make an effort to meet and confer regarding potential motions in limine until June 11, 2009, when by way of correspondence dated that same day, plaintiffs' counsel identified 23 anticipated motions in limine.

3. Attached hereto as Exhibit A is a true and correct copy of the June 11, 2009, correspondence.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July ____, 2009, at Oxnard, California.


_____

DIRK DEGENNA