1  Alan E. Wisotsky (SBN 68051)
   Jeffrey Held (SBN 106991)
2  Dirk DeGenna (SBN 188972)
   LAW OFFICES OF ALAN E. WISOTSKY
3  300 Esplanade Drive, Suite 1500
   Oxnard, California  93036
4  Tel:   (805) 278-0920
   Fax:   (805) 278-0289
5  E-mail:  lawyers@wisotskylaw.com

6  Attorneys for Defendants CITY OF OXNARD,
   OXNARD POLICE DEPARTMENT, JOHN CROMBACH,
7  and ANDREW SALINAS

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11 MARIA LAZOS, et al.,          )    No. CV 08-02987 RGK (SHx)
                                 )
12          Plaintiffs,          )    [consolidated w/
                                 )    No. CV 08-05153 RGK (SH)]
13     v.                        )
                                 )    **DEFENDANTS' DISPUTED JURY**
14 CITY OF OXNARD, et al.,       )    **INSTRUCTIONS**
                                 )
15          Defendants.          )    PTC  :  July 27, 2009
   _____)
16                               )    Trial: August 11, 2009
   AND CONSOLIDATED ACTION.      )    Time :  9:00 a.m.
17                               )    Ctrm :  850 Roybal
   _____)
18

19      Defendants CITY OF OXNARD, OXNARD POLICE DEPARTMENT, JOHN

20 CROMBACH, and ANDREW SALINAS submit the following disputed jury

21 instructions.

22

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
| 1 | Claims and Defenses | 9th Cir. 1.2 | 3 |
| 2 | Particular Rights — Fourth Amendment — Unreasonable Seizure of Person — Excessive (Deadly and Non-Deadly) Force | 9th Cir. 9.22 | 5 |
| 3 | Reasonableness | Special No. 1 | 7 |

28

1

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
| 4 | Justification for Use of Deadly Force | Special No. 2 | 10 |
| 5 | Fourth Amendment Violation | Special No. 3 | 14 |
| 6 | No Duty to Retreat | Special No. 4 | 19 |
| 7 | No Duty to Choose Least Intrusive Alternative | Special No. 5 | 23 |
| 8 | Duty Not to Resist Arrest | Special No. 6 | 28 |
| 9 | Consciousness of Guilt | Special No. 7 | 29 |

Dated:  July ____, 2009

LAW OFFICES OF ALAN E. WISOTSKY

By:_____
    DIRK DeGENNA
    Attorneys for Defendants,
    CITY OF OXNARD, OXNARD POLICE
    DEPARTMENT, JOHN CROMBACH, and
    ANDREW SALINAS

1                          1.2  CLAIMS AND DEFENSES

2

3        To help you follow the evidence, I will give you a brief

4   summary of the positions of the parties:

5        The plaintiffs claim that Defendants used excessive force

6   against him by using unnecessary deadly force.  The plaintiff has

7   the burden of proving these claims.

8        The defendants deny this claim.  Defendants deny that any of

9   their actions during the time in question violated plaintiffs'

10  constitutional rights.  The defendants claim that they were acting

11  in good faith and that their actions were reasonable.     The

12  defendants further claim that they are not guilty of any fault or

13  wrongdoing in regard to the incident sued upon.  Defendants also

14  claim that plaintiffs' damages are the result of decedent Thomas

15  Barrera Jr.'s negligent and wrongful conduct.

16

17

18

19

20

21

22

23

24

25

26

27

28

1          <u>AUTHORITIES IN SUPPORT OF DEFENDANTS'</u>

2          <u>PROFFERED SPECIAL INSTRUCTION NO. 1.2</u>

3

4          Defendants objected to plaintiffs' proposed modification to

5     Instruction 1.2.  Plaintiffs' factual contentions utilized in the

6     instruction are inappropriate and inaccurate.  The instruction

7     calls for a generalization of the parties various claims and

8     defenses.  Defendants submit this alternative to plaintiffs'

9     instruction because it is believed to be more appropriate.  Rather

10    than set forth alleged specific acts of misconduct by Andrew

11    Salinas, the defense's offered instruction generally sets forth the

12    theories each party is pursuing.

1    9.22   PARTICULAR RIGHTS — FOURTH AMENDMENT —

2    UNREASONABLE SEIZURE OF PERSON — EXCESSIVE

3    (DEADLY AND NONDEADLY) FORCE

4

5         In general, a seizure of a person is unreasonable under the

6    Fourth Amendment if a police officer uses excessive force in

7    defending himself.  Thus, in order to prove an unreasonable seizure

8    in this case, the plaintiffs must prove by a preponderance of the

9    evidence that the officer used excessive force when he shot Thomas

10   Barrera Jr.

11        Under the Fourth Amendment, a police officer may only use such

12   force  as  is  "objectively  reasonable"  under  all  of  the

13   circumstances.  In other words, you must judge the reasonableness

14   of a particular use of force from the perspective of a reasonable

15   officer on the scene and not with the 20/20 vision of hindsight.

16        In determining whether the officer used excessive force in

17   this case, consider all of the circumstances known to the officer

18   on the scene, including:

19        1.   The severity of the crime or other circumstances to which

20   the officer was responding;

21        2.   Whether the plaintiff posed an immediate threat to the

22   safety of the officer or to others;

23        3.   Whether the plaintiff was actively resisting arrest or

24   attempting to evade arrest by flight;

25        4.   The amount of time and any changing circumstances during

26   which the officer had to determine the type and amount of force

27   that appeared to be necessary;

28        5.   The type and amount of force used.

1          <u>AUTHORITIES IN SUPPORT OF DEFENDANTS'</u>

2          <u>PROFFERED SPECIAL INSTRUCTION NO. 9.22</u>

3

4          Defendants object to plaintiffs' proposed modification to

5    Instruction 9.22.  Defendants have submitted a proposed Instruction

6    9.22 which is believed to be more appropriate; however, it is

7    likewise objected to by plaintiffs.

8          The support for defendants' proposed instruction is thoroughly

9    briefed in defendants' motion in limine regarding less intrusive

10   alternatives and in the objection to plaintiffs' disputed instruc-

11   tions submitted separately.

12         In summary, point No. 6, of proffered instruction 9.22, is

13   bracketed, with reason.  The issue is whether lesser intrusive

14   alternatives to the force actually used fits within the Fourth

15   Amendment reasonableness calculus or not.  Numerous cases have held

16   that it does not fit, whereas one case, with en banc dicta, held

17   contrary.

18

19

20

21

22

23

24

25

26

27

28

1        DEFENDANTS' SPECIAL INSTRUCTION NO. 1

2                    REASONABLENESS

3

4        The determination of reasonableness in the context of a police

5   officer's use of force must include allowance for the fact that

6   police officers are often forced to make split-second judgments, in

7   circumstances which are tense, uncertain, and rapidly evolving,

8   about the amount of force which is necessary in a particular

9   situation.

10

11

12

13

14

15  Source Authority:

16       *Graham v. Connor*, 490 U.S. 386, 396-397 (1989); *Monroe v. City

17  of Phoenix*, 248 F.3d 851, 861 (9th Cir. 2001); *Billington v. Smith*,

18  292 F.3d 1177, 1184 (9th Cir. 2002); *Jackson v. City of Bremerton*,

19  268 F.3d 646, 651 (9th Cir. 2001); *Cox v. Treadway*, 75 F.3d 230,

20  236 (6th Cir. 1996).

21

22

23

24

25

26

27

28

1          AUTHORITIES IN SUPPORT OF DEFENDANTS'

2          PROFFERED SPECIAL INSTRUCTION NO. 1

3

4      *Graham v. Connor*, 490 U.S. 386 (1989), states that in evalu-

5  ating the constitutionality of police decisions to apply force:

6              The calculus of reasonableness must embody

7              allowance for the fact that police officers

8              are  often  forced  to  make  split-second

9              judgments — in circumstances that are tense,

10             uncertain, and rapidly evolving — about the

11             amount  of  force  that  is  necessary  in  a

12             particular situation.

13  *Graham*, 490 U.S. at 396-397.

14      If the Supreme Court stated that the reasonableness calcula-

15  tion "must" embody such allowance, it is not conceivable that the

16  sentence would not be included in a jury instruction.  The circuits

17  have continually identified that sentence as the fulcrum in evalu-

18  ating the propriety of police force.  The Ninth Circuit has found

19  that that language is crucial.  In that case the officer and

20  suspect were in a physical wrestling match, the officer getting

21  tired, the officer off balance, the officer knowing that the

22  suspect had a knife in his pocket and feeling a tug on his gun

23  belt.  The Ninth Circuit felt it necessary to say that the evidence

24  must be viewed through the prism of the *Graham* admonition that "The

25  calculus of reasonableness must embody allowance for the fact that

26  police officers are often forced to make split-second judgments —

27  in circumstances that are tense, uncertain, and rapidly evolving

28  — about the amount of force that is necessary in a particular

1  situation." *Monroe v. City of Phoenix*, 248 F.3d 851, 861 (9th Cir.
2  2001).

3       In another recent Ninth Circuit decision involving police use
4  of lethal force, it was again held that the guiding light for
5  evaluation of the propriety of the lethal force is embodiment of
6  allowance "for the fact that police officers are often forced to
7  make split-second judgments — in circumstances that are tense,
8  uncertain, and rapidly evolving — about the amount of force that is
9  necessary in a particular situation." *Billington v. Smith*,
10  292 F.3d 1177, 1184 (9th Cir. 2002).

11       In another recent Ninth Circuit case concerning use of force
12  by police, the passage was again emphasized. *Jackson v. City of*
13  *Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

14       The statement has been approved for use as a jury instruction.
15  *Cox v. Treadway*, 75 F.3d 230, 236 (6th Cir. 1996).   The Sixth
16  Circuit pointed out that in *Graham*, the Supreme Court held that all
17  claims that law enforcement officers used excessive force, "deadly
18  or not," in the course of an investigatory stop or seizure must be
19  analyzed under that standard.

20       The *Graham* instruction is certainly not a substitute for a
21  *Garner* instruction, but it is fully legitimate for concurrent use
22  alongside it.   The *Monroe* court found Judge Trott's dissenting
23  observation in another case valid in this regard:   "In cold print,
24  the events . . . appear one way, but as they were unfolding . . . ,
25  they surely had a different cast and immediacy." *Monroe*, 248 F.3d
26  at 861, quoting Trott, J., in *LaLonde v. County of Riverside*,
27  204 F.3d 947, 962 (9th Cir. 2000).
28  / / /

1

<u>DEFENDANTS' SPECIAL INSTRUCTION NO. 2</u>

2

<u>JUSTIFICATION FOR USE OF DEADLY FORCE</u>

3

4      Where a suspect threatens a police officer with a weapon, such

5 as a gun or knife, the officer is justified in using deadly force.

6 Deadly force is justified if a suspect violently resists arrest,

7 physically attacks the officer, or grabs the officer's gun.  Deadly

8 force is also reasonable when a suspect points a gun at a police

9 officer.

10

11

12

13

14 Source Authority:

15      *Tennessee v. Garner*, 471 U.S. 1 (1985); *Reynolds v. County of*

16 *San Diego*, 84 F.3d 1162, 1168 (9th Cir. 1996); *Billington v. Smith*,

17 292 F.3d 1177, 1185 (9th Cir. 2002); *Scott v. Henrich*, 39 F.3d 912,

18 914-915 (9th Cir. 1994); *Smith v. City of Hemet*, 394 F.3d 689, 704

19 (9th Cir. 2005).

20

21

22

23

24

25

26

27

28

1          PLAINTIFFS' OBJECTIONS TO DEFENDANTS

2          SPECIAL JURY INSTRUCTION NUMBER 2

3

4          Plaintiffs object to Defendants' Special Jury Instruction

5   number 2 on the grounds that it mis-states principals of law.

6   Defendants citation, *Smith v. City of Hemet* 394 f.3d. 689 actually

7   stands for the inopposite principal of law.   The *Smith* court was

8   very adament that whether deadly should have been used is an issue

9   for the trier of fact, including whether alternative means were

10  available, and whether each act was reasonable is a fact to be

11  determined separate and apart from each of the preceding and

12  subsequent actions.

13          "A conviction based on conduct that occurred *before* the

14  officers commence the process of arresting the defendant is not

15  "necessarily" rendered invalid by the officers' subsequent use of

16  excessive force in making the arrest. For example, the officers do

17  not act unlawfully when they perform investigative duties a

18  defendant seeks to obstruct, but only afterwards when they employ

19  excessive force in making the arrest. Similarly, excessive force

20  used *after* a defendant has been arrested may properly be the

21  subject of a § 1983 action notwithstanding the defendant's

22  conviction on a charge of resisting an arrest that was itself

23  lawfully conducted. *See, e.g.,  Sanford v. Motts*, 258 F.3d 1117,

24  1119-20 (9th Cir. 2001)"

25          "First, it is necessary to assess the quantum of force used to

26  arrest Smith. "The three factors articulated in *Graham*, and other

27  factors bearing on the reasonableness of a particular application

28  of force, are not to be considered in a vacuum but only in relation

11

1  to the amount of force used to effect a particular seizure -- an

2  analysis the district court never explicitly undertook." *Chew v.*

3  *Gates*, 27 F.3d at 1441. As we have previously explained, an

4  additional factor that we may consider in our *Graham* analysis is

5  the availability of alternative methods of capturing or subduing a

6  suspect. *Chew v. Gates*, 27 F.3d at 1441 n.5. Considering the

7  severity and extent of the force used, the three basic *Graham*

8  factors, and the availability of other means of accomplishing the

9  arrest, it is evident that the question whether the force used here

10 was reasonable is a matter  that cannot be resolved in favor of the

11 defendants on summary judgment."

12     Defendants would lead the jury to believe that law enforcement

13 is justified in using deadly force when a suspect has a knife,

14 regardless of whether the suspect actually poses a significant

15 danger of bodily harm or death.  They also include elements that

16 are not appropriate, there has never been any allegation from any

17 party and/or witness that Tommy Barrera had a gun. In fact,

18 plaintiffs believe that Tommy Barrera was completely unarmed, and

19 did not even have a knife, at each portion of time within which  he

20 was shot. Therefore, the portion of the special jury instruction is

21 not relevent, inflammatory and more prejudicial than probative.

22     Therefore, Defendants' special jury instruction number two (2)

23 should not be approved  by the Court.

24

25

26

27

28

1          AUTHORITIES IN SUPPORT OF DEFENDANTS'

2          PROFFERED SPECIAL INSTRUCTION NO. 2

3

4      The Ninth Circuit recently refined the *Tennessee v. Garner*

5 generalized test to a more specific application, as follows:

6                Thus, where a suspect threatens an officer

7                with a weapon such as a gun or a knife, the

8                officer is justified in using deadly force.

9                See, e.g., *Billington v. Smith*, 292 F.3d 1177,

10               1185 (9th Cir. 2002) (holding that deadly

11               force was justified where a suspect violently

12               resisted arrest, physically attacked the offi-

13               cer, and grabbed the officer's gun); *Reynolds*

14               *v. County of San Diego*, 84 F.3d 1162, 1168

15               (9th Cir. 1996) (holding that deadly force was

16               reasonable where a suspect, who had been

17               behaving erratically, swung a knife at an

18               officer); *Scott v. Henrich*, 39 F.3d 912, 914-

19               15 (9th Cir. 1994) (suggesting that the use of

20               deadly force is objectively reasonable where a

21               suspect points a gun at officers) . . . .

22 *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005).

23

24

25

26

27

28

13

1

<u>DEFENDANTS' SPECIAL INSTRUCTION NO. 3</u>

2

<u>FOURTH AMENDMENT VIOLATION</u>

3

4     A plaintiff cannot establish a Fourth Amendment violation

5 based merely upon bad tactics which result in a deadly confronta-

6 tion which could have been avoided.  In order for a police officer

7 to be held liable for otherwise defensive use of deadly force

8 because of events leading up to a shooting, the plaintiff must

9 prove the following three elements by a preponderance of the

10 evidence:

11     1.   The event leading up to the shooting must in itself be an

12 independent Fourth Amendment violation, meaning that if the

13 challenged event is objectively reasonable under the Fourth Amend-

14 ment, the officer cannot be held liable for the consequences of it

15 regardless of the officer's subjective intent or motive;

16     2.   The challenged events leading up to the shooting must

17 have been undertaken either recklessly or with an intentional

18 design to injure; and

19     3.   The challenged event leading up to the shooting must

20 proximately cause or create the need to use deadly force.

21

22

23

24 Source Authority:

25     *Billington v. Smith*, 292 F.3d 1177, 1189-1190 (9th Cir. 2002).

26

27

28

14

1              PLAINTIFFS' OBJECTIONS TO DEFENDANTS

2              SPECIAL JURY INSTRUCTION NUMBER 3

3

4         Plaintiffs object to Defendants' Special Jury Instruction

5    number 3 on the grounds that it in part was covered in the Ninth

6    Circuit Model Jury Instructions set 9.1 *et seq.,* and it mis-states

7    principals of law.  Defendants citation, *Smith v. City of Hemet* 394

8    f.3d. 689 actually stands for the inopposite principal of law.  The

9    *Smith* court was very adament that whether deadly should have been

10   used is an issue for the trier of fact, including whether

11   alternative means were available, and whether each act was

12   reasonable is a fact to be determined separate and apart from each

13   of the preceding and subsequent actions.

14        "A conviction based on conduct that occurred *before* the

15   officers commence the process of arresting the defendant is not

16   "necessarily" rendered invalid by the officers' subsequent use of

17   excessive force in making the arrest. For example, the officers do

18   not act unlawfully when they perform investigative duties a

19   defendant seeks to obstruct, but only afterwards when they employ

20   excessive force in making the arrest. Similarly, excessive force

21   used *after* a defendant has been arrested may properly be the

22   subject of a § 1983 action notwithstanding the defendant's

23   conviction on a charge of resisting an arrest that was itself

24   lawfully conducted. *See, e.g.,  Sanford v. Motts*, 258 F.3d 1117,

25   1119-20 (9th Cir. 2001) "

26        "First, it is necessary to assess the quantum of force used to

27   arrest Smith. "The three factors articulated in *Graham*, and other

28   factors bearing on the reasonableness of a particular application

                                15

of force, are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure -- an analysis the district court never explicitly undertook." *Chew v. Gates*, 27 F.3d at 1441. As we have previously explained, an additional factor that we may consider in our *Graham* analysis is the availability of alternative methods of capturing or subduing a suspect. *Chew v. Gates*, 27 F.3d at 1441 n.5. Considering the severity and extent of the force drum, the three basic *Graham* factors, and the availability of other means of accomplishing the arrest, it is evident that the question whether the force used here was reasonable is a matter that cannot be resolved in favor of the defendants on summary judgment."

Defendants would lead the jury to believe that law enforcement is justified in using deadly force when a suspect has a knife, regardless of whether the suspect actually poses a significant danger of bodily harm or death.  They also include elements that are not appropriate, there has never been any allegation from any party and/or witness that Tommy Barrera had a gun.  Therefore, the portion of the special jury instruction is not relevent, inflammatory and more prejudicial than probative.

Therefore, Defendants' special jury instruction number three (3) should not be approved by the Court.

16

1                 AUTHORITIES IN SUPPORT OF DEFENDANTS'

2                 PROFFERED SPECIAL INSTRUCTION NO. 3

In *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002), the plaintiff's expert — oddly enough, the same one used in this case — identified seven tactical errors which he claimed, either singly or in combination, created a tactical nightmare where the officer painted himself into a lethal force corner. Yet the Ninth Circuit disagreed, holding that only under very circumscribed circumstances could antecedent tactical errors comprise Fourth Amendment violations. Pre-seizure conduct normally does not constitute a Fourth Amendment seizure unless in a very narrow set of circumstances as explained by the *Billington* court at 1189-1190.

*Billington* held that Ninth Circuit law does not necessarily forbid any consideration of events leading up to a shooting, "but neither do they permit a plaintiff to establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." 292 F.3d at 1190. In order for antecedent or pre-seizure events to be Fourth Amendment actionable, three requirements must be met. Only if these three requirements are met may an officer be held liable for his otherwise defensive and defensible use of deadly force at the moment it is applied.

One of the three elements for an event preceding the shooting to constitute a Fourth Amendment violation is that it must be, in and of itself, an independent Fourth Amendment violation. 292 F.3d at 1189. The requirement that the violation be an independent Fourth Amendment infraction was so important that it was reiterated

17

at 1190.   If a police officer's pre-seizure conduct provokes a violent response "but is objectively reasonable under the Fourth Amendment, the officer cannot be held liable for the consequences of that provocation regardless of the officer's subjective intent or motive."  292 F.3d at 1190.

In addition to being an independent Fourth Amendment violation, the pre-seizure tactic said to give rise to the application of lethal force must also be carried out at a high culpability level.  The conduct fault standard for pre-seizure conduct giving rise to an ultimately defensible shooting is that it must be carried out at the culpability level of intent to injure or reckless provocation.  Only if the pre-seizure tactic can be characterized as falling within one of the two conduct fault standards — reckless provocation or intent to harm — can it be counted toward leading to the ultimately defensible shooting.  The final element is proximate causation — the bad tactics must proximately cause the need to apply lethal force.  We know from *Billington*, 292 F.3d at 1189-1190, that all three elements are indispensable prerequisites for pre-seizure conduct, such as bad tactics, being actionable as leading inexorably toward a shooting which is justifiable at the time of the shooting.  Defendants' proffered Special Instruction No. 3 captures the *Billington* requirements and is necessary because the plaintiff has made so much, through his expert and the defendant officers, of bad tactics being the reason they had to shoot the plaintiff.

1

<u>DEFENDANTS' SPECIAL INSTRUCTION NO. 4</u>

2

<u>NO DUTY TO RETREAT</u>

3

4      The law does not require a police officer to retreat in the

5 face of another's threatened use of force.

6

7

8

9

10

11

12 Source Authority:

13      *Reed v. Hoy*, 909 F.2d 324, 330-331 (9th Cir. 1989), cited with

14 approval in *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.

15 2005); California Penal Code §835a.

16

17

18

19

20

21

22

23

24

25

26

27

28

1                   PLAINTIFFS' OBJECTIONS TO DEFENDANTS'

2                   SPECIAL JURY INSTRUCTION NUMBER 4

3

4        Plaintiffs object to Defendants' Special Jury Instruction

5    number 4 on the grounds that it mis-states principals of law.

6    Defendants citation of *Penal Code Section* 835 actually states as

7    follows:  "The person arrested may be subjected to such restraint

8    as is reasonable for his arrest and detention."

9        Furthermore, there is a difference between "retreating" and

10   running toward a suspect until the officer is separated from a

11   distance of approximately fifteen feet from the suspect, at which

12   point the officer shoots the suspect and shooting him in the back.

13   There is even a greater distinction between "retreating" and

14   shooting a dying man, crumpled and bleeding on the ground, a third

15   time in the back.

16       Therefore, Defendants' special jury instruction number four

17   (4) should not be approved by the Court.

18

19

20

21

22

23

24

25

26

27

28

1                  <u>AUTHORITIES IN SUPPORT OF DEFENDANTS'</u>

2                  <u>PROFFERED SPECIAL INSTRUCTION NO. 4</u>

3

4     Most states, including California, have a series of statutes

5 or appellate decisions providing that police officers need not

6 retreat or desist when a suspect uses force.  In California, for

7 example, that is Penal Code Section 834a.  The Ninth Circuit has

8 held that under federal common law, as applied in this Circuit, it

9 is also not required that the officer retreat.  In the case of *Reed*

10 *v. Hoy*, 909 F.2d 324, 330-331 (9th Cir. 1989), cited with approval

11 in *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), it

12 was held that state law is often relevant in determining the

13 reasonableness of police activities under the Fourth Amendment.  If

14 state law required an officer to retreat before using deadly force,

15 that would be an important factor in determining whether the

16 officer's actions were reasonable under the Fourth Amendment.  The

17 plaintiff did not argue that a police officer must retreat before

18 using deadly force, and there is no independent requirement in the

19 Fourth Amendment that the officer do so.  Since California has a

20 provision of law quite similar to the provision of Oregon law being

21 relied upon in *Reed* to hold that there is no duty to retreat before

22 using deadly force, the same jury instruction is warranted.  In

23 *Reed* it was held that no error occurred by a jury instruction which

24 did not say that the officer had no duty to retreat before using

25 deadly force.

26     California law concerning this subject is equally emphatic, if

27 not more so, than the Oregon statutes which the Ninth Circuit found

28 persuasive in crafting jury instructions in *Reed v. Hoy*:

1                     If a person has knowledge, or by the exer-
2                cise of reasonable care, should have knowledge,
3                that he is being arrested by a peace officer,
4                it is the duty of such person to refrain from
5                using force or any weapon to resist such
6                arrest.
7   Cal. Penal Code §834a.

8                     Any peace officer who has reasonable cause
9                to believe that the person to be arrested has
10               committed a public offense may use reasonable
11               force to effect the arrest, to prevent escape
12               or to overcome resistance.  ¶  A peace officer
13               who makes or attempts to make an arrest need
14               not retreat or desist from his efforts by
15               reason  of  the  resistance  or  threatened
16               resistance of the person being arrested; nor
17               shall such officer be deemed an aggressor or
18               lose his right to self-defense by the use of
19               reasonable force to effect the arrest or to
20               prevent escape or to overcome resistance.
21  Cal. Penal Code §835a.
22
23
24
25
26
27
28

1          <u>DEFENDANTS' SPECIAL INSTRUCTION NO. 5</u>

2        <u>NO DUTY TO CHOOSE LEAST INTRUSIVE ALTERNATIVE</u>

3

4        The law does not require a police officer to choose the least

5   intrusive alternative; the law does require that the force option

6   selected fall within a range of reasonable alternatives in view of

7   the circumstances known to the officer at the time the force is

8   used.

9

10

11

12

13

14   Source Authority:

15        *Billington v. Smith*, 292 F.3d 1177, 1188-1189 (9th Cir. 2002);

16   *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *Forrester v.*

17   *City of San Diego*, 25 F.3d 804, 807-808 (9th Cir. 1994).

18

19

20

21

22

23

24

25

26

27

28

1              PLAINTIFFS' OBJECTIONS TO DEFENDANTS'

2              SPECIAL JURY INSTRUCTION NUMBER 5

3

4        Plaintiffs object to Defendants' Special Jury Instruction

5   number 5 on the grounds that it mis-states prinicipals of law, and

6   repeats other principals of law, specifically Ninth Circuit Model

7   Jury Instruction Number 9.22.  In fact, the model instruction 9.22

8   contains verbatim the same quotation as the Defendants' proffered

9   "special" instruction.  The model jury instructions are carefully

10  balanced recitations of law specifically created to balance the

11  interests of all parties.  Therefore, by repeating a portion of a

12  model jury instruction which directs the trier of fact when to find

13  for defendant, and the mitigating circumstances that must be

14  considered, etc.,  defendants are cleverly attempting to sway the

15  jury to make a determination of fact based upon an inequitable

16  statement of the law. Therefore, Defendants' special jury

17  instruction number one (5) should not be approved  by the Court.

18

19

20

21

22

23

24

25

26

27

28

                                24

1              AUTHORITIES IN SUPPORT OF DEFENDANTS'

2              PROFFERED SPECIAL INSTRUCTION NO. 5

3

4      Two Ninth Circuit decisions address this subject and are

5 quoted below.

6              We have since placed important limita-

7              tions on *Alexander*. In *Scott v. Henrich*, we

8              held that even though the officers might have

9              had less intrusive alternatives available to

10             them, and perhaps under departmental guide-

11             lines should have developed a tactical plan

12             instead of attempting an immediate seizure,

13             police officers need not avail themselves of

14             the least intrusive means of responding and

15             need only act within that range of conduct we

16             identify as reasonable.

17 *Billington v. Smith*, 292 F.3d 1177, 1188-1189 (9th Cir. 2002).

18             Plaintiff argues that the officers should

19             have used alternative measures before approach-

20             ing and knocking on the door where Scott was

21             located. But, as the text of the Fourth Amend-

22             ment indicates, the appropriate inquiry is

23             whether the officers acted reasonably, not

24             whether they had less intrusive alternatives

25             available to them. [Citations] Requiring

26             officers to find and choose the least intrusive

27             alternative would require them to exercise

28             superhuman judgment.  In the heat of battle

                                25

1          with lives potentially in the balance, an
2          officer would not be able to rely on training
3          and common sense to decide what would best
4          accomplish his mission.  Instead, he would need
5          to ascertain the least intrusive alternative
6          (an inherently subjective determination) and
7          choose that option and that option only.
8          Imposing such a requirement would inevitably
9          induce tentativeness by officers, and thus
10         deter police from protecting the public and
11         themselves. It would also entangle the courts
12         in endless second-guessing of police decisions
13         made under stress and subject to the exigencies
14         of the moment.
15   *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

16         Despite these governmental interests, the
17         demonstrators argue that dragging and carrying
18         was a *more* reasonable means of accomplishing
19         the city's goals and therefore contend that any
20         other method was excessive. Police officers,
21         however, are not required to use the least
22         intrusive degree of force possible.  Rather,
23         . . . the inquiry is whether the force that was
24         used to effect a particular seizure was reason-
25         able, viewing the facts from the perspective of
26         a reasonable officer on the scene.  [Citation]
27         Whether officers hypothetically could have used
28         less painful, less injurious, or more effective

26

1              force in executing an arrest is simply not the

2              issue.

3  *Forrester v. City of San Diego*, 25 F.3d 804, 807-808 (9th Cir.

4  1994) [emphasis in original].

5      These three Ninth Circuit decisions would certainly seem to

6  seal the issue.  They solidly hold that less intrusive alternatives

7  are not a basis to find civil rights liability.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1           DEFENDANTS' SPECIAL INSTRUCTION NO. 6

2              DUTY NOT TO RESIST ARREST

3

4      If a person knows, or by the exercise of reasonable care

5   should know, that he is sought to be arrested by a police officer,

6   it is the duty of such person to refrain from using force or any

7   weapon to resist such an arrest.

8

9

10

11

12

13

14   Source Authority:

15      *Reed v. Hoy*, 909 F.2d 324, 330 (9th Cir. 1990), cited with

16   approval in *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.

17   2005); California Penal Code §834a.

18

19

20

21

22

23

24

25

26

27

28

1            <u>DEFENDANTS' SPECIAL INSTRUCTION NO. 7</u>

2                  <u>CONSCIOUSNESS OF GUILT</u>

3

4        One who flees from a uniformed police officer demonstrates a

5    consciousness of his guilt.   A police officer is entitled to

6    consider this factor in his decision-making.

7

8

9

10

11

12   Source Authority:

13        *Illinois v. Wardlow*, 528 U.S. 119, 131-132 (1994); *People v.*

14   *Souza*, 9 Cal.4th 224, 231-232 (1994).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>PLAINTIFFS' OBJECTIONS TO DEFENDANTS'</u>

<u>SPECIAL JURY INSTRUCTION NUMBER 7</u>

Plaintiffs object to Defendants' Special Jury Instruction number 8 on the grounds that it mis-states principals of law. Defendants citation *People v. Souza* (1994) 9 cal.4th. 224 states: "there is no "bright line" rule that a person's flight on encountering a uniformed police officer or a marked patrol car is alone sufficient to justify a detention. Fashioning such a "bright-line" rule applicable to all investigatory stops would violate the United States Supreme Court's directive that police officers on the street, and the courts that evaluate the officers' conduct, consider "the totality of the circumstances--the whole picture" to determine whether a particular intrusion by police was justified. Any temporary detention includes factors that, considered together, may suggest either criminal or innocent behavior to trained police officers. No single fact--for instance, flight from approaching police--can be indicative in all detention cases of involvement in criminal conduct"

The misstatement of law is compounded in it's egregiousness by Defendants' presumptoin of facts.  Andrew Salinas never identified himself as a police officer.  Whether or not Tommy Barrera knew that he was being chased by a police officer has never been determined and therefore is a appropriate province for the jury. Therefore, Defendants' special jury instruction number eight (8) should not be approved by the Court.