1  Jenny Scovis, Esq., State Bar No. 87026
   Kim D. Scovis, Esq., State Bar No. 182059
2  **LAW OFFICES OF KIM D. SCOVIS**
   223 East Thousand Oaks Boulevard, Suite 412
3  Thousand Oaks, California  91360
   Telephone: (805) 496-6413  Facsimile: (805) 379-3966
4

5  Attorneys for Plaintiff, MARIA LAZOS as an individual, and *THE ESTATE OF*
   *THOMAS BARRERA, By and Through its Successor in Interest, MARIA LAZOS*
6

7

8                      UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

11 MARIA LAZOS, *THE ESTATE OF*        )  Case No. CV08-02987-RGK (SHx)
12 *THOMAS BARRERA, By and Through its* )
   *Successor in Interest, MARIA LAZOS* )  (consolidated w/ CV 08-05153 RGK )
13                                      )
          Plaintiff,                    )  **PLAINTIFF'S AMENDED PROPOSED**
14                                      )  **MODEL   AND   SPECIAL   JURY**
   vs.                                  )  **INSTRUCTIONS**
15                                      )
   CITY OF OXNARD; OXNARD POLICE        )  **[TEXT ATTACHED]**
16 DEPARTMENT; POLICE CHIEF JOHN        )
   CROMBACH; ANDREW SALINA, and         )
17 DOES 1-10                            )
                                        )
18                                      )  TRIAL DATE: August 11, 2009
          Defendants.                   )  TIME: 9:00a.m.
19 _____ )  DEPT: "850"
                                        )
20 AND CONSOLIDATED ACTION              )
   _____ )
21

22       Plaintiffs, MARIA LAZOS, TOMAS BARRERA and *THE ESTATE OF*

23 *THOMAS BARRERA BY AND THROUGH ITS SUCCESSORS IN INTEREST MARIA*

24 *LAZOS and TOMAS BARRERA* do hereby submit their Amended Proposed Model and

25 Special Jury Insturctions:

26 ///

27 ///

28 ///

                                   1

1          <u>**NINTH CIRCUIT MODEL JURY INSTRUCTIONS**</u>

2   1.      1.2        CLAIMS AND DEFENSE

3                                Defendant's Objection

4                                Plaintiff's Reply

5   2.      5.1        DAMAGES-PROOF

6                                Defendant's Objection

7                                Plaintiff's Reply

8   3.      5.2        MEASURES OF TYPES OF DAMAGES

9                                Defendant's Objection

10                               Plaintiff's Reply

11  4.      5.5        PUNITIVE DAMAGES

12                               Defendant's Objection

13                               Plaintiff's Reply

14  5.      9.22       PARTICULAR RIGHTS-FOURTH AMENDMENT-

15                     UNREASONABLE SEIZURE OF PERSON-EXCESSIVE

16                     (Deadly And Non-Deadly) FORCE

17                               Defendant's Objection

18                               Plaintiff's Reply

19          <u>**SPECIAL INSTUCTIONS**</u>

20  1.      No. 1      FOURTEENTH AMENDMENT

21                               Defendant's Objection

22                               Plaintiff's Reply

23  2.      No. 2      USE OF DEADLY FORCE

24                               Defendant's Objection

25                               Plaintiff's Reply

26  3.      No. 3      PRIOR INCIDENTS OF ABUSIVE POLICE CONDUCT

27                               Defendant's Objection

28                               Plaintiff's Reply

**PLAINTIFF'S AMENDED PROPOSED MODEL AND SPECIAL JURY INSTRUCTIONS**

| | | | |
|---|---|---|---|
| 1 | 4. | No. 4 | POST EVENT EVIDENCE |
| 2 | | | Defendant's Objection |
| 3 | | | Plaintiff's Reply |
| 4 | 5. | No. 5 | POLICYMAKERS |
| 5 | | | Defendant's Objection |
| 6 | | | Plaintiff's Reply |
| 7 | 6. | No. 6 | SUPERVISORS |
| 8 | | | Defendant's Objection |
| 9 | | | Plaintiff's Reply |
| 10 | 7. | No. 7 | DELIBERATE INDIFFERENCE |
| 11 | | | Defendant's Objection |
| 12 | | | Plaintiff's Reply |

DATED: Aug. 4 , 2009          LAW OFFICES OF KIM D. SCOVIS

_____ /S/

JENNY SCOVIS

Attorneys for Plaintiff, Maria Lazos

DATED: Aug. 4 , 2009          LAW OFFICES OF GREGORY A. YATES

_____ /S/

GREG A. YATES

Attorneys for Plaintiff, Tomas Barrera

**PLAINTIFF'S AMENDED PROPOSED MODEL AND SPECIAL JURY INSTRUCTIONS**

## 1.2 CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiffs claims that Defendants used unnecessary deadly force. Plaintiff alleges that Officer Salinas shot Plaintiff three (3) times in the back when Plaintiff was not armed. Defendant Andrew Salinas claims that Plaintiff was armed with a knife. A knife was found 33/13 feet away up a hill, from the dead Plaintiff. Defendant Salinas, at his deposition, stated that the last shot was a "failure drill". According to Defendant Salinas a "failure drill" is a shot that is aimed at the recipient's head and is intended to kill. Plaintiff allege that Defendants' actions were unreasonable and violated Plaintiffs' constitutional rights. Plaintiffs have the burden of proving these claims by a preponderance of evidence.

The defendants deny this claim. Defendants deny that any of their actions during the time in question violated plaintiffs' constitutional rights. The defendants claim that they were acting in good faith and that their actions were reasonable. The defendants further claim that they are not guilty of any fault or wrongdoing in regard to the incident sued upon. Defendants also claim that plaintiffs' damages are the result of decedent Thomas Barrera Jr.'s wrongful conduct. The Defendants have the burden of proof on these claims and affirmative defenses.

Plaintiffs deny Defendants claiums and affirmative defenses.

DEFENDANTS OBJECTION TO PLAINTIFFS' NINTH CIRCUIT MODEL JURY
INSTRUCTION 1.2

    Defendants object to plaintiffs' proposed modification to
Instruction 1.2. The plaintiffs' factual contentions utilized in
the instruction are inappropriate and inaccurate. The
instruction calls for a generalization of the parties various
claims and defenses. Defendants have submitted a proposed
Instruction 1.2 which is believed to be more appropriate,
however, it is likewise objected to by plaintiffs.

**PLAINTIFFS REPLY TO DEFENDANTS' OBJECTION TO
PLAINTIFFS JURY INSTRUCTION
1.2  CLAIMS AND DEFENSES**


Plaintiffs proposed instructions are both appropriate and accurate.    This instructions provides
the jury with a fair and balanced generalization of the claims and defenses of all parties.
Furthermore, Plaintiffs' instruction, unlike Defendants' Proposed Jury Instruction 1.2, which
incorporates all proposed elements of the instruction.    Defendants' proposed instruction only
includes those portions of the model instruction which benefits defendant.

## 5.1 DAMAGES—PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff's, you must determine the plaintiff's damages. The plaintiff's has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

The nature and extent of the Plaintiffs' injuries; the loss of enjoyment of life experienced and which with reasonable probability will be experienced in the future; the mental, physical and emotional pain and suffering experienced and which with reasonable probability will be experienced in the future; The reasonable value of the plaintiff's loss of the comfort of society companionship, love, experience and which will be experienced as a result of there depravation of the parental relationship with the decedent Thomas Barrera, Jr. The plaintiff's, the Estate of Thomas Barrrea, Jr. by and through representatives Maria Lazos and Tomas Barrera, Sr. For pain and suffering of Thomas Barrera, Jr. And for punitive damages under instruction 5.5

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

DEFENDANTS OBJECTION TO PLAINTIFFS' NINTH CIRCUIT MODEL JURY
INSTRUCTION 5.1
     Defendants object to plaintiffs' proposed modification to
Instruction 5.1.   Defendants have filed a motion in limine
seeking to limit recoverable damages.   The motion in limine, if
granted will make several of the categories of damages listed in
plaintiffs' proposed instruction inapplicable.   Defendants have
submitted a proposed Instruction 5.1 which is believed to be more
appropriate, however, it is likewise objected to by plaintiffs.

**PLAINTIFFS' REPLY TO DEFENDANTS'
OBJECTION TO PLAINTIFFS' PROPOSED
JURY INSTRUCTION 5.1  DAMAGES—PROOF**


Plaintiffs' Proposed Jury Intructions is both appropriate and equitable.   Defendants also filed their own proposed Instruction 5.1 which is almost bare of recoverable damages.   Plaintiffs desire a trial and verdict on the merits, rather than either party prevailing via the clever mutation of the Court's instructions to the trier of fact.   The pitfalls and dangers of slight manipulations and/or omissions to even one or two words is limitless.   Plaintiffs proposed instruction provides the trier of fact with clear and concise explanations and instructions on the application of the jury's determination of facts to the predetermined law.

## 5.2  MEASURES OF TYPES OF DAMAGES

In determining the measure of damages, you should consider:

The nature and extent of the injuries;

The loss of enjoyment of the parental relationship experienced and which with reasonable probability will be eerienced in the future;

The mental and emotional pain and suffering experienced and which with reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services received to the present time;

The reasonable value of necessary medical care, treatment, and services which with reasonable probability will be required in the future;

## 5.5  PUNITIVE DAMAGES

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by clear and convincing evidence that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.  You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

### 9.22  PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—EXCESSIVE (DEADLY AND NONDEADLY) FORCE

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and/or in defending himself.  Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officer used excessive force when he shot and killed Thomas Barrera.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances.  In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

1. The severity of the crime or other circumstances to which the officer was responding;

2. Whether Thomas Barrera, Jr. posed an immediate threat to the safety of the officer or to others;

3. Whether Thomas Barrera, Jr. was actively resisting arrest or attempting to evade arrest by flight;

4. The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary;

5. The type and amount of force used;

6. The availability of alternative methods to take the plaintiff into custody.

*Approved 12/2007*

DEFENDANTS OBJECTION TO PLAINTIFFS' NINTH CIRCUIT MODEL JURY
INSTRUCTION 9.22

Defendants object to plaintiffs' proposed modification to
Instruction 9.22.  Defendants have submitted a proposed
Instruction 9.22 which is believed to be more appropriate,
however, it is likewise objected to by plaintiffs.

Point No. 6, of proffered instruction 9.22, presents an
intriguing question.  The Court will note that in pattern
instruction 9.22, the concept is bracketed, with reason.  The
issue is whether lesser intrusive alternatives to the force
actually used fits within the Fourth Amendment reasonableness
calculus or not.  The answer to that question, in turn, depends
upon whether en banc dicta supersedes unmentioned contrary panel
holdings.

In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005)
[en banc], the issue was whether an arrestee's conviction, based
upon his guilty plea, to resisting, obstructing, or delaying a
peace officer, precluded his §1983 action.  The holding was that
a conviction for that offense might sometimes be based upon
conduct which occurred before or after the officers commenced the
process of arresting the defendant, as opposed to resistance
during the lawful arrest.  Therefore, the holding was that the
conviction under Penal Code §148(a)(1), did not (as required by
the Supreme Court decision in *Heck v. Humphrey*) necessarily imply
the invalidity of the civil action.  The excessive force may have
been utilized at some time when the arrestee was not resisting.
That was the holding of *Smith*.

There are a number of excursions into matters which were
wholly unnecessary to resolve that narrow issue.  One of them was
the relevance of the availability of lesser intrusive
alternatives to the force actually used.  Corroboration for this
assertion appears both in the en banc dissent and in the reversed
panel decision.

The dissent, authored by Judge Silverman, does not address
any of the multiple dicta topics raised in the majority opinion.
There is no discussion of the lesser intrusive alternatives
issue, for example.  Similarly, in the panel decision, 356 F.3d
1138 (9th Cir. 2004), the two-judge majority did not find it
necessary to mention or discuss the issue of less intrusive
alternatives to the force actually used.  The dissenting judge in
the panel decision, William Fletcher, similarly found no need to
reach a conclusion by mentioning or discussing lesser intrusive
alternatives to the force actually used.  Judge Fletcher's
dissent focuses on whether, at some point in the encounter, the
would-be §1983 plaintiff resisted, delayed, or obstructed an
officer in the discharge of his or her duties.  There is no
discussion of the use of lesser intrusive alternatives to those
actually selected.  As Judge Fletcher comments at 1152, "In the
end, this is a simple case."  He states that "as an analytic
matter," it had already been decided in another Ninth Circuit

case, *Sanford v. Mott*.  The issue is whether the convicted civil plaintiff contends that the resistance to which he or she pled guilty occurred at a different point in time than the use of excessive force.

If the availability of less intrusive alternatives were truly a germane issue in the *Smith* case, it is puzzling that the two-judge majority in the panel decision, the dissent in the panel decision, and the dissent in the en banc decision never even mentioned the issue.  It is coincidental that all of those judges simply missed the issue.

The alternatives discussion occurs in a section discussing whether the summary judgment would be supportable on the ground that there was no excessive force at all, even though the moving party apparently never predicated the motion on that basis.  The moving party contended that the basis for the summary judgment was the *Heck* defense — the guilty plea to the 148 charge of resisting arrest.  The motion was not predicated on the absence of excessive force but on the guilty plea.  The discussion of lesser intrusive alternatives in the en banc decision occurs at 394 F.3d 703, where the *Graham v. Connor* factors are being discussed to determine whether the summary judgment was supportable on the ground that the force was reasonable as a matter of law, aside from the 148 guilty plea.  Because the en banc decision was discussing an issue neither raised nor considered by the district court, the parties, or the panel opinion, it is pure dicta.

The section of the *Smith* opinion discussing alternative techniques for capturing a suspect does not mention four panel decisions which predated it. The text of one of these could not be clearer:

> Plaintiff argues that the officers should have used alternative measures before approaching and knocking on the door where Scott was located.  But, as the text of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them. [Citations.] Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the *least* intrusive alternative (an inherently subjective determination) and choose that option and that option only.  Imposing such a requirement would inevitably induce tentative-

ness by officers, and thus deter police from
protecting the public and themselves. It would
also entangle the courts in endless
second-guessing of police decisions made under
stress and subject to the exigencies of the
moment.

*Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) [emphasis in
original].

Although the en banc decision in *Smith* does mention *Scott*,
it is not for its principal proposition at all — the rejection of
lesser intrusive alternatives as a relevant consideration in
excessive force cases. Rather, *Smith* discusses *Scott* only for
the proposition that lethal force may sometimes be appropriate
where the officer is confronted by an armed suspect.

Another Ninth Circuit panel decision whose holding contra-
dicts the dicta in the en banc decision in *Smith* states:

> [T]he demonstrators argue that dragging and
> carrying was a more reasonable means of
> accomplishing the city's goals and therefore
> contend that any other method was excessive.
> Police officers, however, are not required to
> use the least intrusive degree of force
> possible. Rather, as stated above, the
> inquiry is whether the force that was used to
> effect a particular seizure was reasonable,
> viewing the facts from the perspective of a
> reasonable officer on the scene. [Citation.]
> Whether officers hypothetically could have
> used less painful, less injurious, or more
> effective force in executing an arrest is
> simply not the issue.

*Forrester v. City of San Diego*, 25 F.3d 804, 807-808 (9th Cir.
1994).

A third panel holding predating the en banc opinion, and
also not mentioned in it, also contradicts the idea that the
calculus of reasonableness takes into account lesser intrusive
alternatives evidence. The Ninth Circuit stated:

> Similarly, appellants allege that police
> tactics expert Lou Reiter's testimony creates
> a genuine issue of material fact regarding
> the reasonableness of Jackson's use of deadly
> force. In his deposition, Reiter stated that
> Jackson used "reckless" tactics to restrain
> Reynolds.   Reiter concluded that [deputy]
> Jackson should have called for back-up,
> talked to Reynolds in calm tones, and
> refrained from approaching Reynolds while he
> had the knife. Plaintiffs argue that Reiter's
> testimony creates a genuine issue of material
> fact regarding whether his conduct was

objectively reasonable.
    Reiter's findings, however, are insuffi-
cient to raise a genuine issue of material
fact regarding the reasonability of Jackson's
use of force. The fact that an expert
disagrees with an officer's actions does not
render the officer's actions unreasonable.
The inquiry is not "whether another
reasonable or more reasonable interpretation
of events can be constructed . . . after the
fact." [Citation.]

*Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir.
1996).

    In the fourth panel decision holding that less intrusive
alternatives are irrelevant to the calculus of reasonableness,
the Ninth Circuit explained that the law does not require police
officers to make split-second judgments which are unassailable.
Officers do not have to consider, weigh, and select an
alternative which meets someone's after-the-fact belief that the
officer chose the least intrusive alternative     In *Billington v.
Smith*, 292 F.3d 1177 (9th Cir. 2002), the Circuit explained:

    In *Scott v. Henrich*, we held that even though
    the officers might have had "less intrusive
    alternatives available to them," and perhaps
    under departmental guidelines should have
    "developed a tactical plan" instead of
    attempting an immediate seizure, police
    officers "need not avail themselves of the
    least intrusive means of responding" and need
    only act "within that range of conduct we
    identify as reasonable."    We reinforced this
    point in *Reynolds v. County of San Diego*,
    which distinguished *Alexander* because "the
    court must allow for the fact that officers
    are forced to make split second decisions."
    We affirmed summary judgment for the
    defendant police officers despite experts'
    reports stating — like the expert report in
    the case at bar — that the officers should
    have called and waited for backup, rather
    than taking immediate action that led to
    deadly combat. . . . Together, *Scott* and
    *Reynolds* prevent a plaintiff from avoiding
    summary judgment by simply producing an
    expert's report that an officer's conduct
    leading up to a deadly confrontation was
    imprudent, inappropriate, or even reckless.
    Rather, the court must decide as a matter of
    law "whether a reasonable officer could have
    believed that his conduct was justified."

*Billington,* 292 F.3d at 1188-1189 [footnotes omitted.]
     The omission of the en banc opinion to consider the lesser
intrusive alternatives portion of the *Scott, Forrester,* and
*Billington* decisions is mystifying because it mentions all three
cases.  An en banc opinion which skirts relevant portions of
panel holdings must be ineffective to supplant them.
     The viewpoint that lesser intrusive alternatives are utterly
foreign to the Fourth Amendment reasonableness inquiry is articu-
lated in sister-circuit decisions as well:

>          Appellant next argues that the district
>     court erred in excluding evidence that the
>     officers should have responded in a different
>     manner, or that the officers should have used
>     a lesser degree of force. However, the Fourth
>     Amendment does not allow this type of "Monday
>     morning quarterback" approach because it only
>     requires that the seizure fall within a range
>     of objective reasonableness.  [Citation.]
>
>          . . . Again, other circuits have reached
>     the same or similar conclusions. See, e.g.,
>     *Scott v. Henrich . . . ; Plakas v. Drinski,*
>     19 F.3d 1143, 1149 (7th Cir.) (holding that
>     "[t]he Fourth Amendment does not require
>     officers to use the least intrusive or even
>     less intrusive alternatives in search and
>     seizure cases. The only test is whether what
>     the police officers actually did was
>     reasonable") [citations].
>          The Fourth Amendment inquiry focuses not
>     on what the most prudent course of action may
>     have been or whether there were other alter-
>     natives available, but instead whether the
>     seizure actually effectuated falls within a
>     range of conduct which is objectively
>     "reasonable" under the Fourth Amendment.
>     Alternative measures which 20/20 hindsight
>     reveal to be less intrusive (or more
>     prudent), such as waiting for a supervisor or
>     the SWAT team, are simply not relevant to the
>     reasonableness inquiry. For clarity, the
>     reasonableness inquiry in cases such as this
>     where deadly force is used is simply whether
>     "the officer [using the force] has probable
>     cause to believe that the suspect poses a
>     significant threat of death or serious
>     physical injury to the officer or others."
>     [Citation.]

*Schulz v. Long,* 44 F.3d 643, 649 (8th Cir. 1995).
     One court has identified a very practical problem with

allowing arguments concerning evidence of lesser intrusive
alternatives.  Frequently, police departments do not have the
equipment needed to effectuate the lesser intrusive alternatives,
for a variety of reasons.  Sometimes the technology is emergent
and has bugs in it.  Other times, the new technology is expensive
and would bust the department's budget.  Another practical
consideration is that police officers are already weighed down
with a veritable mobile arsenal which makes them slow-moving
targets on hot summer days for attacking suspects.  Officers
already wear hot, heavy, uncomfortable Kevlar vests, duty belts,
service weapons, batons, and so forth.  As the Seventh Circuit
observed, the Fourth Amendment was not designed to enact a police
administrator's equipment list.  *Plakas v. Drinski*, 19 F.3d 1143,
1150-1151 (7th Cir. 1994).  The *Plakas* court wrote, "[W]e think
it is clear that the Constitution does not enact a police
administrator's equipment list.  We decline to use this case to
impose constitutional equipment requirements on the police."

Another flaw in the alternatives argument is that whichever
alternative is selected, there will always be a lawsuit alleging
that it hurt someone.  The use of alternatives does not stop
lawsuits for excessive force — it merely changes the focus of the
argument.  A good example of this problem is the plaintiff's
argument in *Plakas v. Drinski* that officers should have had K-9
units with them so that they could have bitten him instead of
shooting him.  The Seventh Circuit was singularly impressed by an
attorney's argument that his client's constitutional rights were
violated by not being bitten by a police dog — "It is unusual to
hear a lawyer argue that the police ought to have caused a dog to
attack his client . . . ."  19 F.3d at 1148

Dicta was defined by Judge Tashima in his concurring opinion
in *United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001), as a
statement of law unnecessary to the disposition of a case.  *Id.*
at 920.  Dicta is an observational remark in a judicial opinion
addressed to an issue not necessarily involved in the case or
perhaps not essential to its determination.  Statements not
necessary to the decision of the case have no binding or
precedential effect or impact.  Judge Tashima cited *Export Group
v. Reef Industries*, 54 F.3d 1466, 1472 (9th Cir. 1995), for those
propositions.  The Ninth Circuit has held that where the dicta of
a higher court is at odds with the holding of a lower court, the
latter prevails.  *Ayala v. United States*, 550 F.2d 1196, 1200
(9th Cir. 1977), holding that Supreme Court dicta is not binding
upon the Ninth Circuit.

Therefore, the statement about lesser intrusive alternatives
contained in the en banc decision, *Smith v. Hemet*, is not valid
authority and not binding on the lower federal courts.  It was
dicta — a discussion of whether there was or was not excessive
force as a matter of law was not relevant to the narrow legal
issue presented by the parties and the lower court, which
was whether a guilty plea to an obstruction charge barred a civil

rights action.  It also neglected to consider any of the four previous panel decisions insofar as they addressed the holding that evidence of less intrusive alternatives is irrelevant to the constitutional cause of action, these being *Scott, Forrester, Reynolds,* and *Billington.*  The model instruction places the factor in brackets, apparently in recognition of this dilemma.

Defendants submit to this Court that the holdings of four Circuit precedents control one aberrant item of dicta in the en banc decision.  The sixth factor therefore has no place in the Fourth Amendment jurisprudence of this litigation.

## PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTION TO PLAINTIFFS' JURY INSTRUCTION NUMBER 9.22

The Rules of Court are clear.   Each party is to submit to all opposing parties a **one page** objection to each proposed jury instructions.  However, Defendants' Opposition greatly exceeds the limitation imposed by the Court.   This is due to the Defendants' attempt to belatedly supplement a previously filed Motion in limine and to bolster their position prior to arguing said motion in limine instead of objecting to a jury instruction.    As Plaintiffs will not exceed the limitations mandated by this Court, Defendants naturally  obtain an unfair advantage if their objection is not stricken.

Defendants object to Plaintiffs' Jury Instruction number 9.22 on the grounds that it includes an essential element of the jury instruction, namely the last paragraphs (number 6). Tommy Barrera, if one were to accept Defendants' version of facts, had a small knife as a weapon at the time he was shot.  Plaintiffs do not agree with this rendition of events.  However, if one were to assume arguendo that these facts were correct, it is still very debatable whether a reasonable officer would have used a gun if alternative means of defense were available. Again, this is utilizing **the best case scenario** for Defendants.   Plaintiff's instruction is fair and follows clear law.   Therefore, Plaintiffs' version of Jury Instruction 9.22 should be utilized by the Court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SPECIAL INSTRUCTION NO. 1
### FOURTEENTH AMENDMENT

The Fourteenth Amendment to the United States Constitutions prohibits deprivation of life, liberty, or property, without due process of law. Further, a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child.

DEFENDANTS OBJECTION TO PLAINTIFFS' UNNUMBERED SPECIAL
INSTRUCTION ENTITLED "FOURTEENTH AMENDMENT"
    Non-pattern instructions must be supported by citation to
appellate authority.  Without appellate support, a special
instruction is untenable where not contained in the Ninth Circuit
Model Civil Jury Instructions.  This proposed instruction was
served with neither appellate support nor pattern support.

1    **PLAINTIFFS' REPLY SUPPORTING INSTRUCTION NO. 1**

2         Authority: <u>Smith v. City of Fontana</u>, 818 F.2d 1411, 1416 n. 5 (9th Cir.)

3    (parents have a constitutionally protected liberty interest in the custody,

4    companionship and society of their children); <u>Kelson v. City of Springfield</u>, 767 F.2d

5    651, 655 (9th Cir.1985) (same).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SPECIAL INSTRUCTION NO. 2
### USE OF DEADLY FORCE

An officer or a deputy can use deadly force only against a suspect who poses an immediate threat of death or serious physical harm to the officer or to others.

Evidence will be presented in this case to the effect that prior to being shot, Plaintiff committed a crime. However, commission of a crime does not entitle law enforcement officers to shoot a fleeing suspect. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.

# DEFENDANTS' OBJECTIONS TO SPECIAL INSTRUCTION NO. 2

# PLAINTIFFS' REPLY SUPPORTING INSTRUCTION NO. 2

Authority: <u>Tenn. v. Garner</u>, 471 U.S. 1, 11 (U.S. 1985)

## SPECIAL INSTRUCTION NO. 3

## PRIOR INCIDENTS OF ABUSIVE POLICE CONDUCT

Prior incidents of abusive police conduct tend to prove a pattern or custom and the accession to that custom by the policymaker.

DEFENDANTS OBJECTION TO PLAINTIFFS' UNNUMBERED SPECIAL
INSTRUCTION ENTITLED "PRIOR INCIDENTS OF ABUSIVE POLICE CONDUCT"
      Non-pattern instructions must be supported by citation to
appellate authority.  Without appellate support, a special
instruction is untenable where not contained in the Ninth Circuit
Model Civil Jury Instructions.  This proposed instruction has
neither appellate support nor pattern support.

PLAINTIFFS' REPLY SUPPORTING INSTRUCTION NO. 3

This instruction is supported by the following cases:

Grandstaff, et al. v. City of Borger, et al (1985) 767 F.2d 161, 171, cited in U.S.A. v. Soyland, 3 F.3d 1312, 1318 (9th Cir. 1993) (Prior incidents tend to prove a pattern or custom and the accession to that custom by the policymaker); Larez, et al v. City of Los Angeles, et al, 946 F.2d 630 (9th Cir. 1991) (same); Oviatt v. Pearce, 954 F.2d 1470 (9th Cir. 1992) (same).

- 10 -

## SPECIAL INSTRUCTION NO. 4
### POST EVENT EVIDENCE

Post-event evidence is highly probative for purposes of proving the existence of a municipal defendant's policy or custom. The plaintiffs may prove the existence of a policy or custom with evidence of repeated constitutional violations for which the errant deputies were not discharged or reprimanded. This is so whether or not the official policy makers (in this case, Chief Crombach) had actual knowledge of the practice at issue.

Policymaker's inaction in face of a problem, constitutes policy for purposes of §1983 liability. The subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy. When a county continues to turn blind eye to severe violations of constitutional rights, despite having received notice of such violations, you may infer the existence of previous policy or custom of deliberate indifference.

The disposition of the policymaker may also be inferred from his conduct after the events of that night, if following the incident there were no reprimands, no discharges and no admissions of error. If, following incompetent performance, there were no reprimands, no discharges, and no admissions of error, and if episode of dangerous recklessness obtained little attention and action by policymakers, you are entitled to conclude that it was accepted as the way things are done and have been done.

DEFENDANTS OBJECTION TO PLAINTIFFS' UNNUMBERED SPECIAL
INSTRUCTION ENTITLED "POST EVENT EVIDENCE"

    Non-pattern instructions must be supported by citation to
appellate authority.  Without appellate support, a special
instruction is untenable where not contained in the Ninth Circuit
Model Civil Jury Instructions.  This proposed instruction has
neither appellate support nor pattern support.

## PLAINTIFFS' REPLY SUPPORTING INSTRUCTION NO. 4

This instruction is supported by the following cases:

Grandstaff, et al- v. City of Borger, et al (1985) 767 F.2d 161, 171; U.S.A. v. Soyland, 3 F.3d 1312, 1318 (9th Cir. 1993) (Policy, pattern and practice can be inferred from prior and subsequent incidents); Oviatt v. Pearce, 954 F.2d 1470 (9th Cir. 1992) (same); McRorie v. Shimoda, 795 F.2d 780, 784 (9th Cir. 1985) (custom inferred from failure to reprimand or discharge); Grandstaff v. City of Borger, Texas, et al, 767 F.2d 161, 171 (5th Cir. 1985) (Policy, pattern and practice can be inferred if, following an incident, there were no reprimands, no discharges and no admissions of error); Henry v. County of Shasta, 132 F. 3d 512, 518 (9th Cir. 1997) (same); Estate of Abdollahi v. County of Sacramento, 405 F. Supp 2d 1194, 1211 (2005) (same); Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992) ("A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant officers were not discharged or reprimanded").

## SPECIAL INSTRUCTION NO. 5

## POLICYMAKERS

Chief John Crombach is the policy maker for the Oxnard Police Department.

DEFENDANTS OBJECTION TO PLAINTIFFS' UNNUMBERED SPECIAL
INSTRUCTION ENTITLED "POLICYMAKERS"

    This proffered instruction is unnecessary, in light of Ninth
Circuit Model Jury Instructions 9.5 and 9.6.  In addition, non-
pattern instructions must be supported by citation to appellate
authority.  Without appellate support, a special instruction is
untenable where not contained in the Ninth Circuit Model Civil
Jury Instructions.  This proposed instruction was served with
neither appellate support nor pattern support.

## PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTION TO
## PLAINTIFFS' SPECIAL
## JURY INSTRUCTION NUMBER 5

The court must determine as a matter of state law whether certain employees or officials have the power to make official or final policy on a particular issue or subject area. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737–38. *See also Lytle,* 382 F.3d at 983 "For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the defendant public body".

It is important that the jury understand that Chief Crombach was undisputably a policymaker for all other defendants.

## SPECIAL INSTRUCTION NO. 6

### SUPERVISORS

Chief John Crombach is a supervisor.

DEFENDANTS OBJECTION TO PLAINTIFFS' UNNUMBERED SPECIAL
INSTRUCTION ENTITLED "SUPERVISORS"
    This proffered instruction is unnecessary, in light of Ninth
Circuit Model Jury Instructions 9.3.  Non-pattern instructions
must be supported by citation to appellate authority.  Without
appellate support, a special instruction is untenable where not
contained in the Ninth Circuit Model Civil Jury Instructions.
This proposed instruction has neither appellate support nor
pattern support.

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO DEFENDANTS
OBJECTION TO PLAINTIFFS' SPECIAL INSTRUCTION NUMBER 6**

In *Larez v. City of Los Angeles*, the court approved the district court's instruction that the jury could find a police chief liable in his individual capacity if he "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." (citations omitted). *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991). *See also Motley v. Parks,* 432 F.3d 1072, 1081 (9th Cir.2005) and *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir.2003).

In addition, use this instruction only if the plaintiff alleges a subordinate committed a constitutional violation and there is a causal connection between the violation and the supervisor's wrongful conduct

## INSTRUCTION NO. 7

## DELIBERATE INDIFFERENCE

"Deliberate indifference" is the conscious or reckless disregard of the consequences of one's acts or omissions.  To establish deliberate indifference, the plaintiffs must prove that the defendant knew that the plaintiffs faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to correct it.

Authority: O'mally, 165.26

DEFENDANTS OBJECTION TO PLAINTIFFS' UNNUMBERED SPECIAL
INSTRUCTION ENTITLED "DELIBERATE INDIFFERENCE"
     This proffered instruction is unnecessary, in light of Ninth
Circuit Model Jury Instructions 9.7.  Non-pattern instructions
must be supported by citation to appellate authority.  Without
appellate support, a special instruction is untenable where not
contained in the Ninth Circuit Model Civil Jury Instructions.
This proposed instruction has neither appellate support nor
pattern support.

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO DEFENDANTS OBJECTION TO PLAINTIFFS' SPECIAL INSTRUCTION NUMBER 7**

§ 1983 liability of a local governing body lies only when "action pursuant to official municipal policy of some nature caused a constitutional tort," and not on the basis of *respondeat superior*. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). *See also Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997). Such liability may attach when an employee acted pursuant to an expressly adopted official policy. *Lytle v. Carl*, 382 F.3d 978, 981 (9th Cir.2004). *See also Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir.2002), *cert. denied*, 537 U.S. 1106 (2003).

In addition, § 1983 liability of a local governing body may attach when an employee committed a constitutional violation pursuant to a "longstanding practice or custom." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir.2003), *cert. denied*, 540 U.S. 1141 (2004). The plaintiff must prove the existence of such a longstanding practice or policy as a matter of fact. *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir.1996) ("Normally, the question of whether a policy or custom exists would be a jury question."). A "custom or practice" must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Id.* at 918 (quoting *Monell*, 436 U.S. at 691).

1.